RICHARD R. WATERS AND OTHERS *vs.* THE STATE OF MARYLAND—*December* 1843.

The collector of taxes is regarded as an agent of the State, and where he admits the collection of taxes, he will not be heard to urge in his defence to a suit for their recovery, that the money he had received was on account of taxes which the legislature had no constitutional power to impose.

The question of constitutional authority to levy a tax, may arise between the collector and the person taxed, *before* payment, or *after* payment between the State and such person.

By the act of *1831*, ch. 281, a board of managers was provided for, to remove free negroes and mulattoes from *Maryland* to *Liberia*. The treasurer was directed to pay them certain sums of money for the objects of their appointment, which he was authorised to borrow on behalf of the State. The 8th section of the act declared, that for the purpose of raising a fund to pay the principal and interest of the loans aforesaid, the levy courts, &c., were authorised annually to levy on the assessable property within their respective counties, clear of the expense of collection severally, as follows:

on Montgomery county the sum of $340.66, and so on each of the coun-ties the specific sum mentioned in the act as to each, which said sums shall be collected in the same manner and by the same collectors as the county charges are collected, the levy court, &c., taking bond with suffi-cient security from each collector for the faithful collection and payment of the money in the treasury at the time of paying other public moneys, to and for the use of the State. HELD :

1st. That this tax was not laid for the support of government, but with a political view for the good government and benefit of the community, which is apparent from its provisions, and the general course of legislation on this subject.

2nd. That as the act required another bond to be given, payable to the trea-sury, the legislature never looked to the bond given under the act of 1794, ch. 53, as furnishing any security for the collection of the tax imposed by the act of 1831, ch. 281.

3rd. The collector's bond taken under, and in view of the act of 1794, ch. 53, is not responsible for the tax of 1831, ch. 281.

Before a law imposing a tax of a specific sum on each county, for the sup-port of government, can be considered as violating the 13th section of the Bill of Rights, it ought to appear clearly, that the persons taxable are not made to contribute according to their actual worth in real and personal property.

In the absence of evidence, this court is bound to presume, that such a tax was laid according to the provisions of the Constitution, and that the legis-lature may have divided it among the counties, according to the valuation of property in such local jurisdictions, and had such evidence before them as guided their judgment in that particular.

Contracts between collectors of public money and their securities with the government, must be construed in reference to the terms used in them, and by the laws under which they were made.

APPEAL from *Montgomery* County Court.

This was an action of *Debt,* commenced on the 11th May 1838, by the State against the appellants, on their bond, dated 25th September 1835, subject to the following condition :

"The condition of the above obligations is such that if the above bound *Richard R. Waters,* do and shall well and faith-fully execute his office as collector of *Montgomery* county, and the several duties required of him by law, and shall well and truly account for and pay to the justices of the levy court, or their order, the several sums of money which he shall receive and be answerable for by law, at such times as the law shall direct, then the above obligation to be void and of none effect, else to be and remain in full force and virtue in law."

The defendants, after craving *oyer* of the bond and condition, pleaded general performance by the said *Richard R. Waters* to the declaration of the State.

The State replied, that by an act of the General Assembly of the said State, passed at a session of Assembly, begun and held at the city of *Annapolis*, on Monday, the 20th day of December 1831, and ended on Wednesday, the 14th day of March 1832, entitled, "an act relating to people of color in this State," it was, amongst other things, enacted, that for the purpose of raising a fund to pay the principal and interest of the loans authorised and required by said act, the levy courts or commissioners of the several counties of this State, were thereby authorised annually, during the continuance of the said act, to levy on the assessable property within their respective counties, clear of the expense of collection severally, the several sums of money in said act mentioned, and particularly on *Montgomery* county, the sum of $340.66, which said amount or sum of $340.66 was directed by said act to be collected annually in the same manner, and by the same collector, as county charges were collected; and the said State, by its said attorney, further saith, that by an act of the General Assembly of the said State, passed at a session of Assembly, begun and held at the city of *Annapolis*, on Monday, the 29th day of December 1834, and ended on Saturday, the 21st day of March 1835, entitled, "an act to provide more effectually for the levy and collection of the tax imposed for the purpose of colonizing the free people of color of this State, by an act, entitled, an act relating to people of color in this State, passed at December session 1831, ch. 281," it was, amongst other things, enacted, that it should be, and was thereby made the absolute duty of the levy court or commissioners of the county, as the case may be, of the several counties of this State, to levy on the assessable property within their several and respective counties, during the continuance of the act of December session 1831, ch. 281, the several amounts by the eighth section of the said act, and the supplements thereto, authorising to be levied on the assessable property of each of said

counties respectively, and the said levy courts and commissioners were thereby absolutely required, fully and in every respect to comply in future with terms, conditions and requirements of the eighth section of the aforesaid act, or as long as the same shall be and remain in force; and that it should be, and was thereby made the duty of the levy court or commissioners of the county of each and every county of this State, in which the said tax shall not have been heretofore regularly and fully levied, to levy when they shall respectively next levy the annual taxes or county levy for the county purposes of each of said respective counties, on the assessable property within each county, with interest respectively, the arrears of said tax then due by each of said counties respectively, agreeably to the provisions of the aforesaid eighth section of the aforesaid act, and to provide for the collection and payment over of the same to the Treasurer of the *Eastern or Western Shore*, as the case might be, in the same manner as is prescribed for in the eighth section of the act aforesaid; and that it should be the duty of the levy court or commissioners of the county, as the case might be, of each and every county in this State, to forward to the Treasurer of the *Western Shore*, within one month after they shall have respectively levied the tax or dues aforesaid, a certificate that the same has been duly levied and placed in the hands of the proper officer for collection, and that it should be the duty of the Treasurer of the *Western Shore*, and he was thereby authorized and required, if there should not have been received from the levy court or the commissioners of the county as the case might be, of each county in this State, a certificate of the levy of said tax having been made, according to the provisions of the said act, and of the eighth section of the act of eighteen hundred and thirty-one, chapter two hundred and eighty-one, entitled, "an act relating to the people of color of this State," to deduct on or before the first day of December, in each and every year, from that portion of the free school fund which might be payable to the county authorities of any and each county which may have failed to forward such certificates, and in which such tax shall not have been levied, an

amount equal to the amount of said tax which may at the time be in arrears and not levied by each of said counties respectively, so in default and neglecting to comply with the provisions of the said act, as passed at the session of one thousand eight hundred and thirty-four, and the sum so deducted, the treasurer should, to the ordinary purposes of the treasury, to be reimbursed, however, to the free school fund of each county respectively, whenever the said tax should be thereafter duly levied, collected and paid into the treasury from the county so in default, and subjected to such deduction. And the said State, by its said attorney, in fact saith, that the levy court of *Montgomery* county did not levy on the assessable property within the said county, clear of the expense of collection, the said sum of three hundred and forty dollars and sixty-six cents, for three several years, that is to say, for the years one thousand eight hundred and thirty-two, one thousand eight hundred and thirty-three, and one thousand eight hundred and thirty-four, amounting in the whole to the principal sum of one thousand and twenty-one dollars and ninety-eight cents, clear of interest and the expense of collection; and that the said act, entitled "an act relating to the people of color in this State," was during the said several years in full force, and still continues so to be; and that the levy court of *Montgomery* county, did at the first meeting of the said court, after the enactment of the said act, passed at December session one thousand eight hundred and thirty-four, chapter one hundred and ninety-seven, for the purpose of levying the annual taxes of said county, that is to say, on the twenty-second day of September, one thousand eight hundred and thirty-five, did levy on the assessable property of said county, with interest, for each and several year, the arrears of said tax then due from said county, and did provide for the payment and collection of the same to the Treasurer of the *Western Shore*, according to law, and which arrears of tax, with the interest thereon, so remaining unpaid, and so ordered to be levied, amounted to the sum of one thousand one hundred and forty-four dollars and fifty-eight cents; and the said levy court, did at the same time, levy on the as-

sessable property of said county the further sum of three hundred and forty dollars and sixty-six cents, due for the year one thousand eight hundred and thirty-five, clear of the expense of collection, according to the directions of the act of Assembly, passed at December session one thousand eight hundred and thirty-one, entitled "an act relating to people of color in this State;" and which said several sums of money amounted in the whole to the sum of fourteen hundred and eighty-five dollars and twenty-four cents; and which said last mentioned sum of money was to be collected and paid by the said *Richard*, who was then and there collector of the county aforesaid, to the Treasurer of the *Western Shore*, in the year one thousand eight hundred and thirty-five, according to the aforesaid acts of Assembly, and into whose hands, as collector aforesaid, the same was placed for collection; which said last mentioned sum of money, after the making the writing obligatory aforesaid, by virtue of the acts of Assembly aforesaid, and his office of collector aforesaid, the said *Richard* did, in the year one thousand eight hundred and thirty-five, at the county aforesaid, collect and receive, but the same the said *Richard* hath not rendered or paid, but the same to the said Treasurer of the *Western Shore* to render or pay, he has altogether refused, and still doth refuse; and this the said State, by its said attorney, is ready to verify; wherefore the said State prays, &c.

To this replication the appellants demurred generally, and the court having thereupon rendered judgment against them, they prosecuted this appeal.

The cause was argued before Stephen, Archer and Chambers, J.

By Carter and A. C. Magruder for the appellants, and By Boyle, D. A. G., for the State.

Archer, J., delivered the opinion of this court.

It is admitted by the demurrer in this case, that the collector has received all the taxes levied on the assessable property of *Montgomery* county, the non-payment of which furnishes

the subject of this suit. Having thus admitted the receipt of the money, the collector, who is in the light of an agent of the State, could not be heard to urge in his defence to a suit, that the money he had received, was on account of taxes which the legislature had no constitutional power to impose. The question of constitutional authority to levy the tax would properly arise between the collector and the person taxed, before payment or after payment, between the State and such person.

But supposing that it is entirely competent for all the defendants to urge the unconstitutionality of the law imposing these taxes, we will inquire whether they are obnoxious to the objection.

In the argument of the counsel of the appellant, it is contended, that the tax in controversy, is one laid for the support of government. If it were conceded that this was the fact, we should by no means be prepared to pronounce an opinion against it, as violating the 13th article of the bill of rights. Before such a judgment could be formed, it ought to appear clearly to us, that persons taxable, are not made to contribute according to their actual worth in real and personal property. We should be bound to presume, in the absence of evidence, that the tax imposed by the act of 1831, ch. 281, was laid according to the provisions of the constitution. The legislature may have divided this tax among the counties according to the valuation of property in such local jurisdictions, and we must suppose, in the present state of the record, had such evidence before them as guided their judgment in this particular. There is nothing on the face of the law which indicates, that the legislature adopted an arbitrary rule in the apportionment of the tax without regard to the constitutional provision on the subject.

But the tax, as we apprehend, has not been laid for the support of government, but with a political view, for the good government and benefit of the community. The act of 1831, ch. 281, it is true does not declare, that the tax is imposed with a political view, but it is quite apparent from its provisions and the general course of legislation on this subject, that

such was the design of the legislature. The residence of free negroes in the State, who should thereafter be manumitted, was to be dependant upon evidences of extraordinary good conduct, and if such should not be furnished, provision is made in case of their refusal to emigrate, for their transportation beyond the limits of the State. It thus appears they are treated as a vicious or dangerous population, and to lessen the number, provision is made by the law for the removal of all by their consent, and for the transportation of such as might be thereafter liberated, who refused to go, or did not furnish the evidence required of their character. In the same spirit, laws have been passed to prevent their migration to this State; to make it unlawful for them to bear arms; to guard even their religious assemblages with peculiar watchfulness. Other laws might be adverted to, for the purpose of shewing the light in which this population has been regarded by the legislature, but we deem it unnecessary; presuming that enough has been said to lead us to the conclusion, that a law passed for the removal of a population viewed in such a light, has been enacted with a political view.

By the act of 1794, ch. 53, a bond is required to be taken from the collector of the county charge, the condition of which, as prescribed by the law is as follows:

"That if the above bound ———— shall well and faithfully "execute his office, and the several duties required of him by "law, and shall well and truly *account for and pay to the jus-* "*tices of the levy court, or their order,* the several sums of mo- "ney which he shall receive or be accountable for by law, at "such time as the law shall direct, then the above obligation "shall be void."

The bond upon which this suit has been instituted, conforms in all respects, to the bond required to be taken by the act of 1794, ch. 53, the condition of which we have just referred to.

By the act of 1831, ch. 281, sec. 8, it is declared, that the sums levied on the counties for paying the principal and interest of the sum by that act directed to be borrowed, for removing the free people of color, shall be collected in the same

manner, and by the same collectors as county charges are collected, and *directs bond to be taken with sufficient security from such collector,* "*for the faithful collection and payment of the* "money in the treasury of *the Eastern and Western Shore, as* "*the case may be, at the time of paying other public monies to* "*and for the use of the State.*"

If by the act of 1831, ch. 281, a bond had not been directed to be taken of the collector, to pay the tax to be collected under its provisions into the treasury, the words of the condition of the bond taken under the act of 1794, ch. 53, would probably have been sufficient to have entitled the State to a recovery for the taxes now in controversy.

But the contracts of the collectors and their securities, with the government, must be construed in reference to the terms used in such contracts, and by the laws under which they were made. As the law of 1831, ch. 281, has required *another bond* to be given payable to the treasury, we believe the legislature never looked to the bond given under the act of 1794, ch. 53, as furnishing any security for the collection of what is commonly called the colonization tax, directed to be levied by the law of 1831, ch. 281. The parties must, in this view of the law, be considered as not contracting in reference to the latter law, or as contemplating any responsibility for the collection of that tax.

It is also worthy of remark, that the condition of the bonds required to be taken under these laws, demand payment of the sums collected to different officers. By the first, payment is to be made to the justices of the levy court, by the latter to the treasurer. From the above considerations, we are satisfied, that no recovery can be had on the bond in suit in this case, for the tax now in controversy.

We presume as the law directs, that a bond has been taken under the act of 1831, ch. 281, which could alone be sued on. If no such bond has been taken, the State is without remedy against the sureties on this bond.

JUDGMENT REVERSED.