Edward Otis Hinkley, Executor and Trustee of Edward Evatt, and others, *vs.* The House of Refuge, The Maryland State Bible Society, and others.

*Construction of a Will—Effect of a Widow's Election not to take under the will of her Husband, upon the time of payment of Legacies made payable at her death, out of property left to her for Life.*

A testator gave a portion of his personal estate to his wife absolutely, and certain specific real and personal property, in trust for her for life, and after various devises and bequests, gave and devised all the rest, and residue of his real and personal estate, in trust for the sole and separate use of his wife during her life, and from, and after the death of his wife, as to all the property held in trust for her use for life, the testator directed the trustee to pay out of the principal thereof several legacies to charitable institutions, and to hold the balance thereof, in trust as to one half thereof, for the use of all the children of the testator's daughter, who might be living, at the decease of his wife, and as to the other half part therof, for the use of all the children of the testator's sister who might be living at the same period. The widow renounced all benefits under the will, and made her election to take dower and distribution under the law. After her renunciation, the real estate was sold by the trustee, and the proceeds of the whole estate were brought into Equity for distribution, under the direction of the Court. The charitable institutions there made application to have their legacies paid at once, upon the theory, that, as the widow had renounced all devises and bequests under the will, the time of payment of such legacies had been thus accelerated, and they were entitled to receive them presently, notwithstanding by the terms of the will, they were payable only on the death of the widow of the testator. Held :

That the interest and dividends derived from the remainder of the fund or estate which was given to the use of the wife for life, must be retained by the trustee, and converted into capital until the death of the widow; her

Hinkley, Exc'r, *et al. vs.* The House of Refuge, *et al.*

death being the event upon which according to the terms of the will, the legacies to the charitable institutions were payable.

The cases of *Darrington vs. Rogers,* 1 *Gill,* 403, and *Clark vs. Tennison,* 33 *Md.,* 85, distinguished from this case.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by Edward Otis Hinkley, executor of the will of Edward Evatt deceased, against the persons in interest, for the settlement of questions of construction growing out of the renunciation by the widow of all benefits under the will, and her election to take dower and distribution under the law.

So much of the will as bears upon the questions raised is as follows :

1. I direct all my just debts and funeral expenses, and the costs of the administration of my estate, and the taxes to the United States and the State of Maryland, called succession or inheritance tax, to be paid out of that part of my estate hereinafter named as the residue, so that the specific devises and legacies shall be free therefrom.

2. I give to my wife Agnes, absolutely, and as her own, all my furniture and stock in trade, and I authorize her to collect for her own use for life, the interest on all the city of Baltimore stock, which I may own at the time of my death, of which I now own eleven hundred dollars of five per cents.

11. I give all the residue of my estate, of every kind, after payment by my executor of the charges mentioned in the first clause of my will to said Edward Otis Hinkley, and his heirs, executors, administrators and assigns, or his successor in office of trustee, as hereinafter mentioned. To hold with the same powers and for the same trust purposes as are mentioned in the third clause of my will, that is to say, for the sole and separate use of my wife, for the term of her natural life.

12. And from and after her decease, as to all of the property held for the use of my wife for life, as aforesaid,

I direct said trustee to pay out of the principal thereof the following legacies, namely:

To the Aged Women's Home, five hundred dollars; to the person who, at that time, is the Superintendent of the Sunday School connected with the Methodist Episcopal Church in Light street, near to Baltimore street, five hundred dollars. To the person who, at that time, is the Superintendent of the Sunday School connected with the Presbyterian Church of which Reverend Mr. Bullock is now the pastor, five hundred dollars. To the Maryland Blind Asylum, five hundred dollars—I mean the Maryland Institution for the instruction of the blind. To the Home of the Friendless, five hundred dollars. To the Baltimore Association for the Improvement of the Condition of the Poor, one thousand dollars. To the Maryland State Bible Society, two hundred dollars. To the House of Refuge, five hundred dollars. To the Maryland State Sunday School Union, five hundred dollars.

13. After the payment of said legacies, I direct said trustee to hold all said property which he had held for the benefit of my wife for life, including both the property mentioned in the third clause of my will and the Baltimore city stock mentioned in the second clause of my will and the residue mentioned in the eleventh clause of my will, with the same powers as are hereinbefore mentioned in respect to the same, for the trust purposes following, viz.: As to one-half part thereof for the use of all the children of my daughter, who are living at the decease of my wife, equally to be divided between them, the share of a deceased child to go to its parent.

And as to the other half part thereof, for the use of all the children of my sister Sarah Ann Allen, who are living at the decease of my wife, equally to be divided between them, the share of a deceased child to go to its parent, but I exclude William, who is one of the children of my said sister, and put his eldest child in his place, to take the

share of a child of my said sister.   And as to the shares of any of the said children of my daughter or of my sister, who may be in their minority, at the time of my wife's death, I direct said trustee to hold and invest all the net income for accumulation until their majority respectively, then to be paid over to them with the principal, but upon the death of either of said children, leaving children as aforesaid, I direct the division of that share to be made immediately among the children of said deceased child, the eldest child of said William, however, being considered in all respects as a child of said sister, and his share to be retained and accumulated in the same manner.

16. In order that my trustee may be able to settle my estate according to the directions heretofore given, and to manage it most advantageously for all concerned, I empower him, and any successor of him in office of trustee, to sell any part or all of my estate at any time, at auction or at private sale, at his discretion, for the purpose of distribution or for the better management and benefit of my estate, whenever he deems such sale for the benefit of those interested, the proceeds of sale, however, to be reinvested upon the same trusts, unless immediately distributed, and so on from time to time, as often as may be necessary or advantageous.

18. I direct said trustee, hereinbefore mentioned, to pay, after the death of my wife, as mentioned in the twelfth clause of my will, to the person who at that time may be the Superintendent of the Sunday School connected with St. Peter's Protestant Episcopal Church.

The various charitable institutions entitled to legacies under this will, filed their petitions in the cause, praying that their legacies might be paid to them forthwith.   And the Court below (PINKNEY, J.,) decided that they were entitled to be so paid, and passed an order to that effect.

From this order the present appeal is taken.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Edward Otis Hinkley,* for the appellant.

The legacies granted to the appellees are payable only upon the special condition contained in the will ; and there is no valid reason why they should be paid before that event. The renunciation of the widow cannot and ought not to work any alteration in the bequest. The testator not having himself made provision for such an event, it is not competent for a Court of Equity to do it for him. *Darrington vs. Rogers,* 1 *Gill,* 403.

Apart from the express terms of the bequests, which are made payable solely upon the condition mentioned, the anticipation of the period of payment works an injury to the appellants. The renunciation of the widow, takes from the *corpus* of the estate, and diminishes their reversionary interest. In this class of cases, where a devisee elects to take against the instrument, Courts of Equity assume jurisdiction to sequester the benefit intended for the refractory donee, in order to secure compensation to those whom his election disappoints. 2 *Roper on Legacies,* 1661 ; *Jennings vs. Jennings,* 21 *Ohio,* 56 ; 2 *Story's Equity,* sec. 1088 ; *Roe vs. Roe,* 21 *N. J. Eq.,* 253 ; *Webster vs. Mitford,* 2 *Equity Cases Abridged,* 363 ; 1 *Hare & Wallace, Leading Cases in Equity,* 382 ; *Gretton vs. Haward,* 1 *Swanston,* 441 ; *Timberlake vs. Parrish,* 5 *Dana,* 345, 353 ; *McAlister vs. Brand,* 11 *B. Monroe,* 395 ; *Kennard vs. Williams,* 8 *Leigh,* 404, 409 ; *Bard's Estate,* 58 *Penn.,* 393 ; *Beall vs. Schley,* 2 *Gill,* 181 ; *Hanson vs. Worthington,* 12 *Md.,* 418 ; *Marriott vs. Badger,* 5 *Md.,* 306; *Sandoe's Appeal,* 65 *Penn. State R.,* 314 ; 2 *Redfield on Wills,* 741 ; 1 *Jarman on Wills,* 417 ; 2 *Williams on Executors,* 1299 ; *Webster vs. Webster,* 105 *Mass.,* 538 ; *Blaney vs. Blaney,* 1 *Cushing,* 107 ; *Howells vs. Jenkins,* 1 *De G., J. & S.,* 620.

The estate left by the widow, upon her renunciation, is the rest of her life estate as given by the will, and the income from this during her life, is the only fund to compensate the remaindermen. In *Webster vs. Mitford*, the life interest of the widow was so applied.

In those cases in which the interest of the remaindermen is accelerated, upon the life estate being terminated by the renunciation, it is because they were injured, or for the purpose of compensating them—or because of a merger. It was upon this principle that the case of *Clark vs. Tennison,* 33 *Md.*, 85, was decided. There was no intervening or adverse interest, and no trust. Here the trust prevents merger. *Barclay vs. Lewis*, 67 *Penn.*, 319.

There is no case of acceleration of payments to those not in any manner prejudiced by election—when such acceleration would prevent the operation of the equitable rule of compensation to disappointed devisees out of the fund. They are not hurt, nor ought they to be benefitted. And this especially when contrary to the express terms of the will.

In all cases the intention must govern, and this, notwithstanding any election, as far as possible—in other words, the dispositions of the will must stand if they can, even upon renunciation. 2 *Williams on Executors*, 1447, 8, (*Eng. Ed.*,) 1450.

*George H. Williams* and *Fred. W. Brune*, for the appellees.

The case of *Darrington vs. Rogers*, 1 *Gill*, 403, establishes the right of the appellees to claim immediate payment of their legacies, the consequence of the renunciation of the widow of Evatt, the testator, and to adopt, in a great degree, the language of that opinion, on p. 410, upon her election, all the devises and bequests, made to her by the will, were inoperative and void, and the property given to her, except so far as it may be diminished by the exertion

of her legal right, remains as if no such devises and bequests had ever been made to her. The portion devised and bequeathed to her, stands as it would have done before the Act of 1810, if she had died in the life-time of the testator.

Her limited temporary interest in the portion given in part for her for life, sank and passed under the limitation over in moieties to the children of his daughter and his sister ; but their portions are expressly made subject in the 13th clause to the prior payment of the legacies, claimed by the appellees, respectively. As confirming the principle of acceleration, established in *Darrington vs. Rogers*, see the cases of *Clark vs. Tennison,* 33 *Md.,* 85 ; *Rochford vs. Hackman,* 9 *Hare,* 475, (41 *Eng. Chancery ;) Cruver vs. Brady, Law Reports,* 4 *Chancery Appeals,* 296.

ALVEY, J., delivered the opinion of the Court.

Whether the appellees, the charitable legatees mentioned in the will of Edward Evatt, deceased, are entitled to receive at once and without delay, the legacies bequeathed to them, or whether payment is to be delayed until the death of the widow of the testator, is the sole question presented on this appeal.

By the will the testator bequeathed to his wife, absolutely, all his furniture and stock in trade, and authorized her to receive to her own use, during life, the interest on all the Baltimore city stock which he might own at the time of his death ; and he also gave and devised in trust certain property, consisting of houses, in the city of Baltimore, and United States bonds to the amount of ten thousand dollars, with directions that the net income therefrom, that is to say, the rents, dividends and interest, should be paid over to his wife, for her sole and separate use, during her life ; and after various devises and bequests, all the residue of his estate, of every kind, after payment of debts and expenses of administration, the testator gave and devised in trust, for the sole and separate use of his wife,

during her life.   And from and after the death of his wife, as to all the property held in trust for her use for life, the testator directed the trustee to pay out of the principal thereof the several legacies to the charitable institutions named, the present appellees; and, after the payment of these legacies, the rest of the property, so devised and bequeathed, to be held for the use of his wife for life, is directed to be held in trust, as to one-half part thereof, for the use of all the children of the testator's daughter, who may be living at the decease of his wife, equally to be divided between them ; and as to the other half part thereof, for the use of all the children of the testator's sister, who may be living at the decease of his wife, equally to be divided between them.   And in order that the estate should be advantageously administered, and distributed according to the directions of the will, the trustee was fully empowered to sell and dispose of all or any part of the estate. The other portions of the will are not material to be noticed.

The widow of the testator renounced all benefit under the will, and made her election to take dower and distribution under the law.   The widow is still living.   After her renunciation the real estate was sold by the trustee, and the proceeds of the whole estate were brought into equity for distribution, under the direction of the Court.   In this state of the administration of the estate, the appellees made application to have their legacies paid at once, upon the theory, that as the widow had renounced all devises and bequests under the will, the time of payment of such legacies had been thus accelerated, and that they were entitled to receive them presently, notwithstanding, by the terms of the bequests, the legacies were payable only on the death of the widow of the testator.

Now, it is certainly true, that at law, if a party devise to A for life, with remainder to B, and A renounce the devise, or the first devise be void, the remainder is good,

and will take effect immediately. *Shelley's Case*, 1 *Co.*, 101 *a; The Rector of Chedington's Case*, 1 *Co.*, 154; *Plowd.*, 344.

Thus in *Fuller vs. Fuller, Cro. Eliz.*, 423, it was said, as to the second point resolved in that case, that, as the first devise was void, he in remainder was entitled to take the estate presently; for the first devise being void, it was as if it had never been made; and so if the first devisee refuse, he in remainder shall take the estate presently. The same principle was affirmed in *Hodgson vs. Ambrose, Douglas,* 337, where it was held, that, if the first estate devised never takes effect, the remainder vests in possession immediately.

But, while this is the general rule, it is modified under certain circumstances, by the application of the principles of equity, where it is apparent that the event producing the acceleration of the time for vesting the remainder in possession, is not contemplated by the will, and the result produced would contravene the intention of the testator. In this case, it is manifest that it was never contemplated by the testator that the legacies now claimed as payable presently, should be paid before the death of his widow. The renunciation by the widow is an event not provided for by the will; and as by that event a certain portion of the principal or *corpus* of the estate is withdrawn from the trust intended for the benefit of the children of the daughter and sister of the testator, it is but equitable that they should be indemnified or compensated as far as can be, by the appropriation of the benefit renounced by the widow. This is not an application to compel an election, but to have declared the effect of an election already made; and, in such case the general and well established principle applies, that a Court of Equity will assume jurisdiction to sequester the benefit intended for the refractory donee, in order to secure compensation to those disappointed by the election. 2 *Story's Eq. Jur.*, sec. 1083.

Applying this equitable doctrine, the interest and dividends derived from the remainder of the fund or estate, which was given to the use of the wife for life, will be retained by the trustee, and converted into capital until the death of the widow, her death being the event upon which, according to the terms of the will, the legacies to the appellees are payable.

The case of *Darrington vs. Rogers*, 1 *Gill*, 403, has been much relied on by the appellees, and also by the Court below, as being conclusive against the application of the equitable doctrine just stated, to a case like the present. But we do not so understand that decision. There, the question was, upon the terms of the will, whether the separation and division of the testator's estate into moieties should be disturbed and re-adjusted in consequence of the renunciation of the widow; the Court holding, that, as the devise to the wife in lieu of dower was but a temporary interest in one of the moieties, and that devised to the children of the testator, upon her renunciation, the entire moiety passed to the children under the devise in their favor, subject only to the rights of the widow, in virtue of her election; and that consequently, no part of the interest devised or bequeathed to the wife fell into the general residue or remainder of the estate, which, by express direction, had been antecedently divided, and of one of which divisions the interest renounced formed a part. Indeed, the circumstances of that case were not of a character to call strictly for the application of the equitable doctrine now invoked, and it is not clear that the case was decided with any particular reference to it.

The case of *Clark vs. Tennison*, 33 *Md.*, 85, also relied on by the appellees, presented a very different question from that presented in this case. There a construction was placed upon the will to effectuate the plain intention of the testator. He had given his property to his wife during her widowhood, with a limitation over to his children after

her death; and it being apparent that the testator did not design a state of intestacy in respect to the property upon the marriage of the widow, it was held that the limitation over to the children became effective upon the termination of the estate given to the wife, whether by her marriage or death.

The order appealed from will be reversed, and the cause remanded for further proceedings; the costs of the appeal to be paid out of the fund.

*Order reversed, and*
*cause remanded.*

(Decided 24th June, 1874.)