MERCANTILE TRUST COMPANY, Executor and Trustee, *v.* IDA SCHLOSS et al.

RUTH SCHLOSS *v.* IDA SCHLOSS et al.

[Nos. 16, 17, April Term, 1933.]

*Decided May 25th, 1933.*

The causes were submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*L. Wethered Barroll* and *Fisher & Fisher,* for the appellants.

*Edwin T. Dickerson* and *John E. Magers,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

William Schloss, of Baltimore City, died on the 15th of May, 1931, leaving a last will and testament executed on April 30th, 1930, which was duly probated in the Orphans' Court of Baltimore City on June 8th, 1931, and letters testamentary were granted to the Mercantile Trust Company of Baltimore, which duly qualified as executor. By the first item of the will the testator directed that his debts and funeral expenses and all taxes of every kind be paid out of the estate. By item two he bequeathed to Ida Schloss, his wife, all his household goods, furniture, wearing apparel, articles of personal use, and any automobile or automobiles which he might own at the time of his death absolutely. By item 3 the executor was directed to pay Ida Schloss, accounting from the date of death of the testator, the sum of $200 per month until such time as she be actually receiving income from the trust estate created by the will. Items 4, 5, and 6 are as follows:

> "4. I give, devise and bequeath to Mary Jane White, daughter of James and Mary Ann Oswald, the property known as 402 West Saratoga Street in Baltimore City and the entire contents of said property, including all fixtures and furniture thereon. I also give and bequeath to the said Mary Jane White the sum of Six thousand dollars ($6,000.00), absolutely and forever. 5. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of every kind and description, wherever situated, of which I may die seized and possessed or of

which I may be in any manner entitled to dispose by last will and testament, unto the Mercantile Trust Company of Baltimore, in special trust and confidence, nevertheless, for the following uses and purposes and subject to the following conditions and limitations, to wit: In trust to collect the income therefrom and after paying all expenses chargeable against said trust estate, to pay the net income unto my wife, Ida Schloss, as long as she shall live. 6. Upon the death of my said wife, Ida Schloss, if she survives me, or if my said wife does not survive me, then upon my death, the aforesaid trust shall terminate and end and the said trustee shall, as soon as possible, convert the principal of said trust estate into cash and said trustee shall thereupon divide, distribute and pay over the principal of said trust estate then in its hands, absolutely and free and clear of all trusts, as follows"—designating certain persons, corporations, or institutions, in certain designated amounts aggregating $265,000.

The will further provides that the trustee shall pay over the balance of said trust estate in his hands, after the payment of the above-mentioned legacies and bequests, unto the Sinai Hospital of Baltimore, Incorporated. The trustee is then given broad powers in the management and control of said trust estate, and every part thereof, and also the right to invest and reinvest, or change investments.

By item 9 it is provided:

"For the purpose of making division of said trust estate and for any other purpose in the administration or distribution thereof, said trustee is authorized and empowered to sell and dispose of any part of said trust estate, real or personal, and to execute such deed or deeds as may be necessary and appropriate to convey the same to the distributees or to the purchasers thereof, without the necessity of the order of any court whatsoever, and any such purchaser shall be relieved of the necessity of seeing to the application of the purchase money. The trustee is empowered, upon making any division of any of the trust estates, to divide the

same in whole or in part in kind, and the judgment of said trustee shall be conclusive as to the value of any property or securities included in any division of said trust estates or in any payment or delivery of any part of the corpus thereof herein directed to be made and it shall not be necessary for said trustee to employ any appraisers or to apply to any court whatsoever for any order ratifying or approving any such division or payment or delivery of any part of said trust funds."

By item 10 it is provided:

"The foregoing provisions for my said wife are intended to be and shall be in bar of her dower and all other interests of every kind and description in my real and personal estate."

Finally in item 13 it is provided:

"It is my intention and I do hereby declare that the mention of the above powers are not intended to be an inhibition upon the exercise of other powers by my executor, but that my executor shall have the same power over my estate as I would have if living."

An inventory and appraisal was filed in the orphans' court on January 14th, 1932, showing the whole amount of the estate to be $135,238.18.

On October 7th, 1931, the widow, Ida Schloss, renounced the will and elected to take in lieu of all bequests or devises her legal share of her deceased husband's estate, both real and personal. On the 12th day of January, 1932, the widow executed and filed the following assignment:

"In consideration of the sum of Five ($5.00) Dollars, and other good and valuable considerations, I do hereby assign, transfer and set over unto Schloss Bros. & Co., Inc., and Michael Schloss, all my right, title and interest of every kind, nature and description, in and to the estate of my late husband, William Schloss. I hereby confer upon Michael Schloss full power and authority in my behalf, and as fully as I personally could do, to select such portion or portions of the estate

of the said William Schloss as and for my interest therein, as the said Michael Schloss, in his discretion, may deem desirable and advisable."

On August 12th, 1932, the appellant, as executor and trustee under the will of William Schloss, filed its bill of complaint in Circuit Court No. 2 of Baltimore City, wherein all the parties entitled under any of the provisions of the will were made defendants, and wherein it was prayed:

"1. That this Honorable Court may take jurisdiction in the premises and may advise and direct your orator as executor in the further administration of said estate. 2. That this Honorable Court may instruct your orator as to the effect, if any, of the aforesaid renunciation of the testator's widow upon the bequest to the said Mary Jane White of said leasehold property known as 402 W. Saratoga Street and said pecuniary bequest of $6,000.00 in the fourth item of said will. 3. That this Honorable Court may instruct your orator as to the effect, if any, of the aforesaid renunciation of the testator's widow upon the provisions of item sixth of said will. 4. That this Honorable Court may assume jurisdiction of the trust created by the fifth and sixth items of said will to determine to what extent, if any, the benefit intended for the widow should be sequestered to compensate said Mary Jane White for the loss of an undivided one-half interest in 402 W. Saratoga Street." And, fifth, for other and further relief.

Among the beneficiaries of the trust estate were a certain Ruth Schloss and Nathan Schloss, infants, for whom, upon petition, guardians *ad litem* were appointed.

All of the defendants answered, consenting and submitting to any decree that might be passed therein, with the exception of Mary Jane White, who alleged in her answer that the renunciation of the widow should have no effect upon the pecuniary legacy made to her in the fourth item of the will; that the trustee should pay to her, in addition to the $6,000 and one-half undivided interest in the property No. 402 West

Saratoga Street, an amount equal to one-half of the appraised value of $7,000, to wit, $3,500, from the residue of said estate, and that said transfer of said one-half interest and said payments of $6,000 and $3,500 should be made at once, and should not be contingent upon the accumulation of income or the death of the said Ida Schloss; and with the further exception of the two infants, who by their guardians neither admitted nor denied the allegations of the bill of complaint, but submitted their rights to the protection of the court; and with the further exception of a number of institutional beneficiaries, which in their answers neither admit nor deny but consent to the passage of such decree as may be right and proper. The record further shows that on the petition of Charles A. McNabb, guardian *ad litem* for Ruth Schloss, infant, L. Wethered Barroll, Esq., was appointed counsel to said guardian *ad litem.* Testimony was taken in open court on October 3rd, 1932, at which time the plaintiff and defendants were represented; after which, on December 6th, 1932, the chancellor passed his decree. It is from that decree the two appeals here were taken: the appellant in No. 16 being the Mercantile Trust Company of Baltimore, a corporation, as executor and trustee under the will of William Schloss, deceased, and the appellant in No. 17 being Ruth Schloss, infant. The two appeals are in one record and present the same questions.

There was a motion made by the appellees in this court to dismiss the appeal, on the ground that the decree was a consent decree, from which no appeal lies. We will first dispose of this motion. It is settled law in this state that no appeal will lie from a consent decree. *Miller's Equity Proc.,* sec. 363, and cases cited in note. See, also, *Ward v. Hollins,* 14 Md. 158, at page 168; *Emersonian Apts. v. Taylor,* 132 Md. 209, at page 214, 103 A. 423. It has been said that cases wherein the decree is broader than the consent constitute an exception to this rule; but, strictly speaking, such decrees are not consent decrees as to so much of the decree as is beyond and outside of the consent, and therefore are not exceptions, but rather cases not coming with-

in the rule. There is nothing on the face of the decree or contained in it that shows it to be a consent decree. Neither is it specifically consented to by any of the parties, with the single exception of the American School for the Blind, one of the legatees, which through its attorney subscribed on the decree: "We assent to the aforegoing decree." The basis for the contention of its being a consent decree is the correspondence between counsel for the executor and trustee and some of the counsel for the appellees, which seems to indicate that the decree, as signed, was presented to the chancellor by the solicitor for Mrs. White, and represented the belief of that attorney that such a decree was acceptable to all of the parties. After careful examination of this correspondence, we are unwilling to say that the decree, as signed, was that agreed to by all of the parties, and particularly by the appellants in this case. The motion to dismiss will therefore be overruled, and the appeals considered.

The safer and better practice, and the one, in our opinion, which should be followed, is to have the chancellor state in the decree that it was passed by consent, or the consent of the parties indorsed thereon. This is the rule laid down by Mr. Miller in his work on *Equity Procedure,* and has received the sanction of this court in the case of *Williams v. Williams,* 7 Gill, 302, 305. Such a rule is positive and definite, affording uncontrovertible evidence of the consent, and obviating any contention on motions to dismiss on such ground; neither does it impose any hardship upon the parties.

On the merits, the appellants make four contentions: First, that the valuation of $25 a unit for the stock of Schloss Bros. & Co., Inc., is not supported by any legally sufficient evidence. Second, that the doctrine of sequestration should not be applied in order to compensate Mary Jane White for the loss of the one-half interest in 402 West Saratoga Street. Third, that, if the chancellor correctly decided that Mary Jane White was entitled to receive $9,500, the decree should have made payment dependent upon the sale of sufficient assets of the estate to enable the executor to pay said amount, in view of the fact that the total amount of cash in the

estate was but $5,003.75. Fourth, that, the widow having renounced, and there being no issue, the assignees of the widow are entitled to one-half of the entire surplus personal estate, principal and income, at the time of distribution.

The record discloses that by far the larger amount of the decedent's estate was the ownership of 4,800 shares of preferred stock, and 4,800 shares of common stock, of Schloss Bros. & Co., Inc., which according to the appraisement was valued at $120,000, arrived at by assessing a unit of one share of preferred stock and one share of common stock at $25 per unit.

Among the claims filed against the estate, which constituted practically all of the debts owed by the decedent, were the claims of Schloss Bros. & Co., Inc., in the amount of $41,668.69, and of Michael Schloss in the amount of $3,710. By the decree the trustee was directed to settle these claims by transferring to Schloss Bros. & Co., Inc., 1,666 shares of preferred stock and a like amount of common stock of Schloss Bros. & Co., Inc., plus the sum of $18.69, which would be equivalent to the debt, valuing each unit at $25, said unit to be made up of one share of preferred and one share of common stock; and the claim of Michael Schloss was decreed to be paid in the same manner. The value of $25 per unit of this stock was made by sworn disinterested appraisers appointed by the orphans' court, which appraisement was offered in evidence at the hearing before the chancellor, and at which hearing, as stated, all parties were represented by counsel. There was no effort on the part of counsel for any of the parties to show that such valuation was not true, fair, and accurate; and we are of the opinion that under such circumstances as here presented the appraisal, as shown in the inventory, must be accepted as being the true value of the stock and binding upon the parties. The settlement of the widow's one-half share was also made, for the most part, in stock at that valuation; and, unless this particular stock is a notable exception, of which there is no suggestion, it is more than probable that its value at this time would be less than at the time the appraisement and

inventory was made. We find no error in the decree in this respect.

The second question presented by the contentions of the appellants is whether or not the doctrine of sequestration should be applied in order to compensate Mrs. Mary Jane White for the loss of one-half interest in 402 West Saratoga Street. The renunciation of the widow, Ida Schloss, so far as regards the remaindermen's interest in the estate, was equivalent to her death, and had the effect of accelerating the remainders and making them become payable presently, instead of at the time designated in the will. In renouncing the provision made by the will, Mrs. Schloss was taking advantage of the provision made for her by law; and, in rejecting the terms of the will and demanding her legal share, such act is regarded as equivalent to her death. *Darrington v. Rogers,* 1 Gill, 403; *Devecmon v. Kuykendall,* 89 Md. 25, 42 A. 963; *Cockey v. Cockey,* 141 Md. 374, 118 A. 850; *Safe Dep. & Trust Co. v. Gunther,* 142 Md. 644, 121 A. 479; *Johnson v. Stringer,* 158 Md. 315, 148 A. 447, 450. In the last-cited case, in speaking of the effect of renunciation by the widow, the court said: "It is undoubtedly true that after her renunciation the full intent of the testator as expressed in his will could not be carried out, because the amount which each one of the beneficiaries was to receive under the terms of the will was altered by the renunciation of the widow. What the law gave her after the renunciation was an increase over and above what the testator indicated was his intention, and resulted in a corresponding decrease to the remaining beneficiaries. What the widow took after her renunciation was not under the will, but in opposition to the will; and its effect upon the remaining beneficiaries was twofold: It damaged them to the extent that their respective shares were diminished by the enlargement of the widow's share, and it benefited them by accelerating or pushing forward the time at which they would receive the full benefits of their remainder interest. In other words, so far as hastening the full enjoyment of their remainders, the widow's renunciation was equivalent to her death. The renunciation of the widow

was something that the testator could not prevent; but he is presumed to have known that she could renounce, and charged with knowledge of the legal effect of such renunciation. Every husband, therefore, when he makes a will, does so charged with the knowledge that its provisions may be affected by the renunciation of his widow. But a renunciation by the widow makes only such changes in the will and in the intention of the testator as the law compels. * * * 'In a case like the one before us the effort must be to find and carry out the testator's chief intent with a minimum disturbance of the general plan of the will.' " *Safe Dep. & Trust Co. v. Gunther, supra.; Disston's Estate*, 257 Pa. 537, 101 A. 804; *Vance's Estate*, 141 Pa. 209, 21 A. 643.

Applying the rule above stated, namely, that the renunciation of the widow should do no greater violence to the intention of the testator than is compelled by law, we will examine the effect of the renunciation of Mrs. Schloss in the present case. There can be no dispute as to the intention of the testator being that, after his debts and costs of administration were paid out of the estate, Mrs. Mary Jane White should receive the property 402 West Saratoga Street, together with the household furniture and fixtures, and also the sum of $6,000 in money, all to be paid to her before the ascertainment of the amount of the trust fund. The Saratoga Street property was leasehold property subject to an annual ground rent of $50, and was appraised, as shown by the inventory, at $7,000. It is clear that under the will she would have been entitled to the Saratoga Street property as a whole, together with the $6,000 pecuniary legacy, subject only to the testator's debts and costs of administration, and before any of beneficiaries of the trust fund received any part thereof; that is to say, the ascertainment of the trust fund was to be made by deducting the Saratoga Street property and the legacy of $6,000 from the testator's net estate. The will then provided that the trust estate so ascertained should be held by the Mercantile Trust Company as trustee, to pay the widow the net income derived therefrom so long as she lived, and at her death the trust estate was to be converted into cash and dis-

tributed among those persons named by the testator to receive portions of the corpus in the amounts or proportions named in the will. The renunciation of the widow, which, for the purpose of distribution among the remaindermen, was equivalent to her death, resulted in an acceleration or pushing forward of the time at which the remaindermen are entitled to receive their distributive shares. There being no children of the testator, the statute (Code, art. 93, sec. 311), upon the widow's renouncing and electing to take her legal share, entitled her to one-half of the testator's net estate, which included the Saratoga Street property. By the decree, she or her assignees were given an undivided one-half interest in the Saratoga Street property, and one-half of the remaining net estate of the testator. This resulted in a loss to Mrs. Mary Jane White of one-half of the value of the Saratoga Street property, which one-half, according to the appraisement, would amount to $3,500. The question, therefore, is: Should Mrs. White be compensated for such loss out of the corpus of the trust estate after Mrs. Schloss, the widow, had received her one-half share thereof? The appellants contend that she should not, and rely upon the cases of *Devecmon v. Kuykendall, Cockey v. Cockey, Safe Dep. & Trust Co. v. Gunther,* and *Darrington v. Rogers, supra.* It was said in *Darrington v. Rogers*: "The election of the widow to stand upon her legal rights does, it is true, occasion loss to the appellants; but it is a loss resulting by operation of law, and against which the testator only could have provided an indemnity. [The testator] has provided no change or substitution in the testamentary disposition of his property [in the event of his widow renouncing]; and he having failed to do it, we cannot do it for him."

The same rule is stated in varying language and applied in others of the above cited cases, and now appears to be firmly settled. In all of those cases there was nothing left in the estate which had been devised or bequeathed to the widow, after her renunciation and the receipt of her legal share, which could be sequestered for the purpose of reimbursing or making whole specific legacies or devises which had been

impaired by the renunciation of the widow; and, consequently, it was held that such loss was occasioned by operation of law, and must be borne without remedy, where the testator himself had made no provision for such contingency. We do not think the facts of the present case bring it within the application of the rule announced in those decisions. It is apparent that, after the debts and costs of administration were paid, the first object of the testator's bounty was Mrs. White, even to the exclusion of his widow, because the will provided that she should receive her bequest in diminution of the amount of the trust fund, to the income of which the widow would have been entitled for life, and the corpus divided at her death among those named. The renunciation of the widow does not change the intent as expressed in the will, and should not be allowed to defeat such declared intention, unless it be impossible to give it fulfillment. It was the declared intent of the testator that Mrs. White should receive her legacy before those entitled to the remainder of the trust fund; and, while the renunciation of the widow takes from her one-half of the Saratoga Street property, she should be reimbursed from the remaining corpus of the trust before the remaindermen entitled to that corpus receive any part thereof. This view is in accordance with the decree in that respect; and we find no error.

At the time of the decree appealed from, there was in the hands of the trustee the sum of $5,003.75 in cash; and it directed the executor and trustee to sell at the stock board, for the best price obtainable, or at private sale for not less than twenty-five dollars a unit, 580 units of the stock of Schloss Bros. & Co., Inc., held as a part of the corpus of the trust estate, for the purpose of obtaining sufficient additional cash with which to pay Mrs. White's legacy and the costs of administration, including the executor's and trustee's commissions, which were specifically determined in the decree. The objection is made by the trustee that these 580 units of stock, when sold on the market, might bring less than twenty-five dollars a unit and result in the trustee being unable to comply with the terms of the decree in making settlement

with Mrs. White and paying other costs and expenses. It is evident from the record and briefs that this item of the decree was based upon the theory that certain of the other holders of the stock of Schloss Bros. & Co., Inc., would pay twenty-five dollars per unit for the stock decreed to be sold. This they may do, but cannot be compelled to do. If they fail to pay such price, and it cannot be obtained from other parties at private sale, the stock would have to be offered on the market, and such a sale might not result in securing sufficient cash to comply with the other provisions of the decree. In our opinion, this objection is sound, and the decree should be so modified as to permit and direct the trustee to sell so many of the units of the stock of Schloss Bros. & Co., Inc., as will suffice to enable it to comply with the other provisions of the decree, provided that, if the sale be made privately, it should not be sold for less than twenty-five dollars per unit.

The final objection is that, in settlement with the widow or her assignees, they were given one-half of the net estate, excluding therefrom any income received during the year of administration. This was error, under the authority of *Gardner v. Mercantile Trust Co.,* 164 Md. 280, 164 A. 663, which held that, where a widow renounced, she was not entitled to interest, as interest, but was entitled, there being no children, to one-half of the net estate for distribution, including income, which for this purpose was merged with the corpus.

For the errors pointed out, the decree must be reversed, and case remanded for the passage of a decree in accordance with the views herein expressed.

> *Decree reversed, and case remanded; costs to be paid out of the corpus of the estate in the hands of the trustee.*