JOHN MILTON DOWELL ET AL. *v.* H. WILSON DOWELL

H. WILSON DOWELL *v.* BETTIE DOWELL ET AL.

[Nos. 57, 58, October Term, 1939.]

*Decided November 29th, 1939.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*James W. Hughes,* with whom was *Arthur Dowell* on the brief, for John Milton Dowell and others.

*John B. Gray, Jr.,* and *J. Dudley Digges,* for H. Wilson Dowell.

BOND, C. J., delivered the opinion of the Court.

The case is one for the adjusted distribution of a testator's property and estate after renunciation by his widow of all benefits under the will. The Circuit Court of Calvert County, in equity, upon a bill by the executor, both in his own right and as executor, assumed jurisdiction to give instructions on the problems arising, and the appeals are entered from its decree.

The testator, Henry D. Dowell, of Calvert County, died leaving a will by which he first devised and bequeathed to his widow, for her life or widowhood, all his estate of every kind except as provided subsequently in the will, with remainder in what is called the Home Farm, and all the personal property included under that clause, to three daughters of the couple. Another farm, called the

Owings or Chaneyville Farm, he devised to another son, H. Wilson Dowell, in fee. To another son, John Milton Dowell, he gave a mortgage, or if it should be paid off, a money equivalent. And to children of a third son, James Albert Dowell, he gave a mortgage on property of that son, or a money substitute if it should be paid off. Sums of money were bequeathed to the daughters. And a final, or sixth, clause devised and bequeathed to the Prince Frederick Bank of the Eastern Shore Trust Company, now the County Trust Company, in trust to pay the income to the widow for life, with remainder to the six children, all the cash which he might leave and all mortgages and other securities for debt he might own at the time of his death, except mortgages and cash previously bequeathed, and cash needed for expenses of administration and payment of debts.

The widow having renounced the will (Code, art. 93, secs. 311-313), there are questions of reimbursement of the specific devisees and legatees for loss by subtraction of the widow's share, of acceleration of the remainders in the first and final clauses, and of a right in the son, H. Wilson Dowell, to take the farm devised to him, not merely under the will, but under a contract with his father, which the son asserts as withdrawing that farm from the effects of his mother's renunciation. In case it should be decided that there was no such effectual contract, that son is one of the claimants to reimbursement out of other parts of the estate.

The chancellor was unable to find sufficient proof of the contract, and held that the widow took her third interest in the particular farm upon her renunciation, as well as in all other property of the decedent. And upon the authority of the decisions in *Hinkley v. House of Refuge*, 40 Md. 461, 470; *Mercantile Trust Co. v. Schloss*, 165 Md. 18, 30, 166 A. 599, and other cases, the decree awarded all devisees and legatees, suffering deprivation of the third part, reimbursement from the benefits attempted to be provided for the widow in the will; and to accomplish this, the remaining two thirds of property in

which she would have taken a life estate under the first and sixth clauses were directed to be sequestered, and held in trust to repay the devisees and legatees from the income, the trust to cease in any event, however, upon the death or remarriage of the widow. The amounts so made payable were specified in the decree.

As to the claim of H. Wilson Dowell to contract rights in the Owings or Chaneyville farm, free and above any rights in his mother by virtue of her renunciation, this court, passing a question whether such a contract to devise might be enforced in this proceeding, concurs in the conclusion of the chancellor that it has not been proved. The contention is that the father made the agreement in consideration of the son's taking over the working of the farm at a time when it had not been profitable to the father, and producing income from it. The chief testimony to the agreement is that of the son's wife. The son himself testified to it over objection, but this testimony must be disregarded under the statute forbidding the claimant to testify after the death of the testator. Code, art. 35, sec. 3. Other witnesses on his behalf testified only to having heard the father say, in conversations in the past, that he intended to devise to the son as he did. But the testimony of an agreement is strongly contradicted by direct testimony and circumstances in evidence. It is not necessary to state more than the result of it, as the court sees it. The son had been unsuccessful in keeping a store during seven or eight months, and came to the father, without a home of his own and without employment, and it was this plight of his that persuaded the father, solely for the relief of the son, to put him on the farm. Another son had to be transferred from this farm to another to bring it about. Such a claim as the son now makes, when the other party's testimony is silenced by death, is always heard with hesitation and disfavor. *Soho v. Wimbrough*, 145 Md. 498, 510, 125 A. 767; *Harman v. Hurst*, 160 Md. 96, 101, 153 A. 24; *Cossen v. McAllister*, 170 Md. 395, 398, 184 A. 921. And much more certain and persuasive

proof than is found in this record must be produced to establish it.

In *Hinkley v. House of Refuge,* 40 Md. 461, the will of a testator contained, first, a bequest to his wife for life of the interest on some Baltimore City stock; then followed a devise and bequest of real and personal property in trust to pay her the income for life; then various other devises and bequests, and, finally, a residuary clause gave all the residue of the estate in trust for the sole and separate use of the wife during her life, with remainders to charitable institutions, and to children of a daughter and of a sister of the testator. Upon a renunciation of the will by the widow, some of the remaindermen applied for immediate payment of their legacies, as having been accelerated by the failure of the particular estate, and were awarded payment in a proceeding in equity. But this court held that, while acceleration did take place, it did so only subject to reimbursement of the losing devisees and legatees from the intermediate estate which, under the will, was to suspend the remainders. The fact of acceleration was recognized, but the advantage of it was subordinated to a use of the intervening life estate for reimbursement. "In this case," said Judge Alvey for the court, "it is manifest that it was never contemplated by the testator that the legacies now claimed as payable presently, should be paid before the death of his widow. The renunciation by the widow is an event not provided for by the will; and as by that event a certain portion of the principal or corpus of the estate is withdrawn from the trust intended for the benefit of the children of the daughter and sister of the testator, it is but equitable that they should be indemnified * * * as far as can be, by the appropriation of the benefit renounced by the widow. * * * in such case, the general * * * principle applies, that a Court of Equity will assume jurisdiction to sequester the benefit intended for the refractory donee, in order to secure compensation to those disappointed by the election." 2 *Story, Equity,* sec. 1083. And see *Miller, Construction of Wills,* sec. 297,

p. 837; *Pomeroy, Equity Jurisprudence*, sec. 517. The early case of *Darrington v. Rogers*, 1 Gill, 403, and that of *Clark v. Tennison*, 33 Md. 85, were distinguished as cases on circumstances not calling for indemmification. And, reversing a decree of the chancellor, this court directed that, "the interest and dividends * * * from the remainder of the fund or estate, which was given to the use of the wife, for life, will be retained by the trustee, and converted into capital until the death of the widow, her death being the event upon which, according to the terms of the will, the legacies to the appellees are payable."

That case is closely similar to the case now being considered; in principle, it is the same. All the devisees and legatees here, including remaindermen, are to suffer diminution in the properties in which they were to have ownership sooner or later, and under the decree below they are to suffer it in equal proportions. The remainders are accelerated, but only to an extent. Payment of the reimbursement may release them before the death of the widow. If they were to be paid now they would receive, in the acceleration, an addition to their shares over and above that which was provided in the will. This has been denied them, and the suspension of their taking under the will is continued so far as may be necessary to pay the indemnification or compensation until the death or remarriage of their mother. And the chancellor has in his decree adopted the same solution.

In the more recent case of *Mercantile Trust Co. v. Schloss*, 165 Md. 18, 30, 166 A. 599, the same equitable indemnity or compensation was given after a widow's renunciation of her husband's will, but the court emphasized the apparent intention of the testator that the property in which benefits were provided for the widow under the will was only that which might remain after a full payment of a specific devise and a legacy claimed. Indemnity and compensation were awarded from a remaining half of the corpus of a trust in which the widow was to benefit for life, before the remaindermen received from it the benefits given them by acceleration or death

of the widow. It was observed in the opinion that in earlier decisions it had been stated broadly that upon renunciation by a widow there would be no indemnification of losing devisees and legatees, unless the will provided it. *Darrington v. Rogers*, 1 Gill 403; *Devecmon v. Kuykendall*, 89 Md. 25, 42 A. 963; *Cockey v. Cockey*, 141 Md. 373, 374, 118 A. 850; *Safe Deposit & Trust Co. v. Gunther*, 142 Md. 644, 121 A. 479; *Johnson v. Stringer*, 158 Md. 315, 148 A. 447. But the court concluded that the statement was so absolute in form in those cases because "there was nothing left in the estate which had been devised or bequeathed to the widow, after her renunciation and the receipt of her legal share, which could be sequestered for the purpose of reimbursing or making whole specific legacies or devises."

The decision in *Hinkley v. House of Refuge, supra,* cannot be distinguished from that of the chancellor in this case, and that in *Mercantile Trust Co. v. Schloss, supra,* is authority for the rule of indemnification when it can fairly be made; and it appears fair in this instance. The court cannot find that there was error in the decree giving it effect.

In this case, too, it is questioned whether indemnification should not have been made from the residuary estate alone. But the final clause in the present will is not the ordinary residuary clause; it rather partakes of the nature of both a specific and a residuary legacy, and at least does not manifest an intention, as in *Mercantile Trust Co. v. Schloss*, that the preceding devises and legacies be paid as a whole before any gift in the last clause. And the equitable rule of indemnification as generally applied requires that all benefits provided in the will for the widow should be applicable without distinction. The decree doing so here is found correct in that respect.

The valuation of the Owings or Chaneyville farm serving as the basis of calculating the reimbursement of H. Wilson Dowell, the devisee of it, is contested by him. He valued it in evidence at $12,000, and there were witnesses to support his estimate and witnesses contradicting

it. The chancellor adopted a valuation of $10,000, and so estimated the compensation payable at $3333. This seems questionable, if questionable at all, only because it is possibly too high for the evidence, but in any event it is reasonably close to the result of the proof, and the conclusion of the chancellor cannot be reversed on the record.

*Decree affirmed, each appellant to pay his own costs.*