POTTER ET AL. *v.* SCHAFER ET UX.

[No. 85, September Term, 1962.]

*Decided December 13, 1962.*

*Motion for reconsideration, reargument and apportionment of costs filed December 21, 1962, denied January 16, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*G. Richard Park,* with whom were *Miller & Miller* on the brief, for the appellants.

*Mark P. Friedlander, Jr.,* with whom was *Carlton L. Saunders* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

The appellees, Paul W. Schafer and Elizabeth Carol Schafer, husband and wife, in June 1961, filed a bill of complaint in the Circuit Court for Montgomery County, Maryland, which alleged in substance that the appellants, Lloyd A. Potter and wife, and John L. Matthews and wife, had (1) violated a building restriction line, and (2) violated an alleged implied easement for a portion of a sewage disposal system.

As the result of the trial, which was held on January 16 and 17, 1962, the opinion and the decree of the trial court found (1) that the building restriction line had not been violated, but concluded (2) that appellants "did damage and interfere with the complainants' septic system." In connection with the latter finding the court ordered the appellants to pay $1445 to the appellees, that amount having been found to be the cost of connection to the public sewer which was available to the premises involved.

This appeal is by the appellants from the adverse portion of that decree. There was no cross appeal by the appellees, the complainants below.

The appellants were builders. In September, 1958 they acquired approximately three acres of land along MacArthur Boulevard in Montgomery County, for the purpose of a planned subdivision and house construction. On the land was a large residence, constructed around 1890, which was referred to in the testimony as "the castle." Between the time of the acquisition of the three acre tract and about September, 1959, the appellants did repair and redecorating work on the castle, and on one occasion had a party there which included approximately one hundred guests. During the course of those activities the plumbing in the castle was utilized and appeared to function adequately.

Around June, 1959 the appellees sought out the appellants to inquire about purchasing the castle and, after protracted negotiations, a written contract was executed by the parties on

December 10, 1959. The contract provided that the castle was sold and accepted "as is" and specified a lot carved from the acreage to accommodate it, the rest of the land being left for use in the planned subdivision. Appellees occupied the castle in March, 1960.

At the time of the sale and occupation the sewerage system serving the castle consisted of a septic system with septic fields that extended over the land retained by the appellants. From the testimony there appeared to have been no complaint as to the sewerage system prior to the purchase of the house by the appellees. Though appellants denied it, there was testimony that in the winter of 1960 appellants and appellees inspected the ground where a new house was to be built on appellants' retained land, and the appellants indicated a thorough knowledge of the septic system. Judge Shure in his opinion in the lower court relied on the appellees' version of what transpired during the inspection.

There was a conflict as to the actual time, but some time after November, 1960, when appellants began to excavate for a new house on their retained land, sewage began to appear on the surface of appellees' land downhill from the castle toward Mac-Arthur Boulevard. The sewerage system had worked satisfactorily up to this time. It was conceded that a bulldozer, during the excavation, had broken one of the septic lines.

From the testimony it appeared that the actual cause of the breakout of raw sewage was the placing of concrete plugs in pipes leading to distribution boxes in the septic system, although it was not shown at what time or by whom the plugs were placed in the pipes. After the plugs were removed the disposal system still did not function properly due to the disruption of the septic absorption field by appellants' excavation for the new house. This was the gravamen of the appellees' claim for damages.

Appellants first contend that when appellees' expert, a plumber, admitted on cross examination that his cost estimate could be lowered by a specific amount by using plastic rather than copper pipe, damages should have been confined to the unit rate of using plastic rather than copper.

Since the evidence indicated that the septic system, after the excavation, could not be restored to its original condition and that the appellees' sewage disposal system could only be made adequate by connecting the lines with the public sewer running along MacArthur Boulevard, Judge Shure awarded damages using the rate of $6.00 per lineal foot for the necessary 210 feet of copper pipe ($1260), plus $185 county fees, or a total of $1445. The plumber admitted that by using plastic pipe the cost could be reduced to $5.00 per foot. The judge did not consider the lesser unit rate, nor did he have to do so. In *Dowell v. Dowell,* 177 Md. 370, 9 A. 2d 593, this Court said, in considering a valuation of a farm, that though the lower court may have valued it too high, it was valued reasonably close to the result of the proof, and it should not be reversed on the record. Even if the lower cost of plastic pipe would have resulted in a reduction of the damages by $210, as now claimed by the appellants, the judge was not bound to accept appellants' contention that plastic pipe would be the equivalent of copper.

Appellants next argue that the evidence does not show that they were responsible for the disruption of the drainage system. There was evidence, however, that although the original trouble may have been due to the concrete plugs (whenever and by whom placed there) in the system, that after their removal there would have been adequate septic drainage if appellants had not disrupted the drainage field by the excavation on their land. Judge Shure in his opinion resolved that issue in favor of the appellees. This Court has held in a long line of cases that the judgment of the lower court will not be set aside on the evidence unless clearly erroneous, and its findings of fact will not be lightly disturbed. *Blair, Exec. v. Haas,* 215 Md. 105, 115, 137 A. 2d 145, and cases cited therein. See also Maryland Rule 886 a.

Appellants' last two contentions were considered together by the chancellor below and will be so considered by us. They were: (1) is a vendor responsible to a vendee when a house the former sells develops a sewage disposal problem; particularly where the contract specifies that the house is sold and accepted "as is"; and (2) did appellees prove by a preponder-

ance of evidence that use of the alleged implied easement was apparent, continuous and necessary?

If appellants had actual knowledge of the easement as to drainage it went with the house "as is." The chancellor found that appellants did have actual knowledge prior to the time when they contracted with the appellees that there was a drainage field and that it extended beyond the boundaries of the house and lot sold to the appellees. For the same reasons set out above in *Blair,* the chancellor's opinion should not be set aside.

> "But if during unity of ownership the owner of two properties uses one for the benefit of the other in such manner as would indicate existence of an easement if the properties were owned by different persons, 'then, upon a conveyance of the [dominant] property so used an easement will be granted to the purchaser, provided the use has been such that the easement resulting from it would be of the class known as continuous and apparent, and would be necessary for the reasonable enjoyment of the property conveyed.' "

*Slear v. Jankiewicz,* 189 Md. 18, 23, 54 A. 2d 137; *cert. den.* 68 S. Ct. 453; 333 U. S. 827; 92 L. Ed. 1112. The requirement of "apparent" is not needed here since the chancellor below found appellants had actual knowledge of the easement being conveyed.

*Decree affirmed. Costs on this appeal to be paid by appellants.*