LUCY W. BRADY MARRIOTT *v.* EMILY GRACE MARRIOTT ET AL.
JOSEPH W. CUSHING ET AL. *v.* SAME
JOSEPH J. GUMBERT ET AL. *v.* SAME
[Nos. 53, 54, 55, October Term, 1938.]

568

*Decided January 10th, 1939.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Hall Hammond,* for Lucy W. Brady Marriott, appellant.

*Frederick J. Singley, Jr.,* with whom was *Louis J. Burger* on the brief, for Joseph W. Cushing and Thomas Morris Cushing, appellants.

*Lawrence B. Fenneman,* for Joseph J. Gumbert, appellant.

*F. Howard Smith,* for the appellees.

MITCHELL, J., delivered the opinion of the Court.

Telfair W. Marriott, of Baltimore City, died on July 13th, 1937, leaving a last will and testament dated February 3rd, 1932; a codicil thereto, dated November 14th, 1932; and a second codicil, dated December 9th, 1935; which said will and codicils were duly admitted to probate by the Orphans' Court of Baltimore City, and on July 20th, 1937, letters testamentary were granted thereon to the Safe Deposit and Trust Company of Baltimore, executor named in said will.

The testator left real property of the approximate value of $12,000, and personal property sufficient, after the payment of taxes, debts, and expenses incident to the administration of the estate, to result in a net personal estate of approximately $20,000, consisting mainly of stocks, bonds, and cash.

Mr. Marriott was survived by his widow, Lucy W. Brady Marriott, but left no child, descendant, parent, or brother or sister him surviving. He did, however, leave surviving a number of nephews and neices, all of whom are mentioned in his said will. He made no devise or bequest to his wife, and she claimed her legal share of his estate, including $2,000 allowance, as provided by section

127 of article 93 of the Code (1935 Supp.), by timely notice in writing to the executor of the estate.

In response to the petition of the executor for a meeting of distributees, and summons thereunder, Mrs. Marriott filed her answer, claiming the $2,000 allowance above indicated, and one-half of the real and personal estate. And Joseph J. Gumbert, who under the second codicil to the will was bequeathed $1,000, and Joseph W. Cushing and Thomas Morris Cushing, the latter two being nephews of the deceased, who under the original will were each bequeathed $500 as pecuniary legatees, also filed answers claiming that there should be no diminution in the respective legacies bequeathed them by the testator, as a result of the allowance to the widow of her statutory and legal share of the estate of the decedent.

In addition to the pecuniary legacies above set forth, the testator bequeathed fifty dollars to James Edward Scott and Anita Scott, his wife; and, to such of his nephews and nieces as might survive him, he also specifically bequeathed all of his portraits, jewelry, silverware, books, pictures, furniture, and household and personal effects, the same to be divided among them by mutual agreement btween said nephews and nieces, with power vested in the executor to make such division in event of their failure to agree. And, by the residuary clause of his will, the testator devised and bequeathed his remaining estate, either absolutely, or subject to certain trusts fully detailed in the will, to his nephews, William McKim Marriott and Haskins Neblet Marriott, and his nieces, Emily Grace Marriott and Abbie Marriott Byrnes; the executor of the estate being also designated as trustee in each of the trusts created by the will.

Item 13 of the will contains the following provision: "I wish to state further that I have made no special bequest to my wife, Lucy W. B. Marriott, because of her present circumstances, and hope and request that she will not demand her dower or any part of my estate, and I do not appoint her my executrix because I desire to relieve her of all details."

In this situation, after a meeting of the distributees of the estate, held in pursuance of the provisions of section 148 of article 93 of the Code of Public General Laws of this State, and after testimony was taken and the claims of the respective legatees or distributees were presented and considered, the Orphans' Court of Baltimore City, on June 1st, 1938, passed an order directing the distribution of the estate of Mr. Marriott, which, with respect to the matters in controversy in this repeal, provided as follows:

"1. That Lucy W. Brady Marriott, the widow of said testator, is entitled to one-half of the personal estate of said testator remaining for distribution in addition to the widow's allowance of $75.

"2. That said widow is not entitled to an additional sum of $2,000 under the provisions of section 127 of article 93 of said Code (1935 Supp.).

"3. That said widow, by taking her legal share, is a co-owner with each of the legatees named in the will of said testator, without distinction, to the extent of one-half and that each legatee must bear the loss sustained by reason of the widow's insistence upon her legal share without contribution from any of the other legatees.

"4. That in pursuance of the foregoing determination of this Court and in pursuance of the terms of the will of said testator as affected thereby, it is ordered this 1st day of June, 1938, that said executor shall make distribution of the personal estate of said decedent remaining for distribution after the payment of all proper costs, fees, taxes and other expenses incident to the administration of said estate, including said widow's allowance of $75 and the costs and expenses of this proceeding, in the following manner, that is to say:

"(a) Unto Lucy W. Brady Marriott, widow of said testator, one-half thereof, which shall include one-half of the chattels mentioned in the first item of the will of said testator.

"(b) Unto Joseph W. Cushing, Thomas Morris Cushing, Haskins Neblett Marriott, William McKim Marriott,

nephews of said testator, and Emilie G. McKim Marriott and Abbie Marriott Byrnes, nieces of said testator, the other half of said chattels mentioned in the first item of the will of said testator.

"(c) Unto Joseph W. Cushing, nephew of said testator, the sum of $250.

"(d) Unto Thomas Morris Cushing, nephew of said testator, the sum of $250.

"(e) Unto Joseph J. Gumbert the sum of $500.

"(f) Unto James Edward Scott the sum of $12.50.

"(g) Unto Anita Scott the sum of $12.50."

The remaining part of the order being then directed to the manner in which the residuary estate should be distributed.

Three appeals from the aforegoing order are embraced in one record before us, as follows:

(1) That of Mrs. Marriott, directed to that part of the order disallowing the $2,000 claimed by her, as above set forth.

(2) That of Joseph W. Cushing and Thomas Morris Cushing, nephews and specific legatees of the testator, directed to that part of the order which, by reason of the assertion by the widow of her claim, apportions the consequent diminution of the testator's estate among the pecuniary and the residuary legatees alike, and thereby ignores priority to the pecuniary legatees.

(3) And that of Joseph J. Gumbert, pecuniary legatee, based upon the same premise which forms the ground of the appeal of the two specific legatees, mentioned in the next above subparagraph. Accordingly the two latter appeals will be disposed of together.

The first comprehensive system of testamentary law was enacted in this state in 1798, and while various amendments have since been made to certain provisions of the original Act, in so far as the share of a widow in the personal estate of her husband is concerned, the Act of 1798 remained unchanged down to 1933, except that, under the provisions of sections 317 and 318 of article 93 of the present Code of Public General Laws

of Maryland, the widow was given a special allowance of $150 or $75, as the case may be, whether the husband died testate or intestate. Other legislation, however, has enlarged her rights in real property of her deceased husband, still reserving to her the right of dower, upon her election as provided by the Act.

Under the Act as originally passed, in all cases of intestacy in which the deceased husband was not survived by child, parent, grandchild, brother or sister, or the child of a brother or sister, the widow was entitled to the whole of the personal estate, after the payment of all proper debts and charges. Code, art. 93, sec. 125. In event, however, the intestate husband was survived by a child or children, or a descendant or descendants from a child, the widow's share of the personal estate was limited to one-third. Section 126, article 93. And in event the intestate husband was not survived by a child or descendant, but was survived by either father, mother, brother, sister, or child of a brother or sister, the widow's share of the personal estate was limited to one-half. Section 127, article 93.

While the Act of 1898, ch. 331, conversely made the aforegoing corresponding provisions of the Code of 1888 applicable to the rights of a surviving husband in the estate of his intestate wife, it did not otherwise amend the said provisions. And such was the law of this state with reference to the rights of a widow in the personal estate of her husband, until the passage of chapter 386 of the Acts of 1933, which repealed and re-enacted section 127, above mentioned, so as to read as follows: "If there be a surviving husband or a widow, as the case may be, and no child or descendant of the intestate, but the said intestate shall leave a father or mother, the surviving husband or widow, as the case may be, shall have one-half. If there be a surviving husband or widow, as the case may be, and no child or descendant of the intestate, and no parent, but the said intestate shall leave a brother or sister, or child or descendant of a brother or sister, the surviving husband or widow, as the case may be, shall

take Two Thousand Dollars ($2,000), or its equivalent in property, or any interest therein, at its appraised value, and one-half of the residue." Code (Supp. 1935), art. 93, sec. 127.

It is the construction of this latter section which gives rise to the appeal of Mrs. Marriott in the instant case; and it is ingeniously argued that, because of the fact that she was ignored in the will of her husband, he died intestate as to her, and that, therefore, her claims in Mr. Marriott's estate should be adjusted and settled as though he had died intestate.

Section 310 of article 93 of the Code provides that "every devise of land or any estate therein, or bequest of personal estate to the wife of the testator shall be construed to be intended in bar of her dower in lands or share of the personal estate, respectively, unless it be otherwise expressed in the will." Section 311 of the same article limits the time, and directs the manner, in which a surviving spouse may renounce a devise or bequest, or both, to her or him, by the will of the husband or wife, as the case may be, and elect to take in lieu thereof, respectively, a dower in lands and legal share of the personal estate, or a legal share in both the real and personal estate; in which latter case the renouncing spouse, if the deceased spouse be not survived by descendants, shall take "one-half of the lands, as an heir, and one-half of the surplus personal estate * * * and no more." And section 314 of the above article is as follows: "But if in effect nothing shall pass by such devise, she shall not be thereby barred whether she shall or shall not renounce as aforesaid, it being the intent of this article, and consonant to justice, that a widow accepting or abiding by devise, in lieu of her legal right, shall be considered as a purchaser with a fair consideration."

In *Hokamp v. Hagaman*, 36 Md. 511, a case in which nothing was devised or bequeathed to the wife by the will of the husband, it was held that: "The testator having, by his will, made no provision for his wife, by devise or bequest, there was no occasion for any renunciation

upon her part; and Code, art. 93, sec. 285 (now section 310), authorizing distribution to the widow (where there is a will, devising or bequeathing to her anything, upon her renunciation of the will.) of one-third of the estate, has no application to this case. Nor does article 93, section 120 (now section 124) and the other sections, in regard to the distribution of estates of intestates, apply to a case like this, where there is a will disposing of the property of the testator. Hagaman having left no child, and his wife surviving him, she is entitled, according to the principles of the common law, as settled by the cases of *Griffith v. Griffith's Excrs.*, 4 H. & McH. 101, and *Coomes v. Clements*, 4 H. & J. 480, to the one-half of his personal estate."

Referring to the case of *Griffith v. Griffith's Excrs.*, *supra*, it is found that in that case the testator devised a part of his real estateto his widow, but bequeathed all of his personalty to other persons. The widow did not renounce the will, and it was held, as theree were children, that she was entitled to one-third of his personal property after payment of debts and funeral charges. And in *Coomes v. Clements, supra,* the testator bequeathed the whole of his personal property away from his wife, but devised to her a part of his real estate, and died leaving no child or descendants. The wife renounced the will as to the realty, and the court held that she was entitled to one-half of his personal estate after the payment of his debts.

It would seem, therefore, that it is well settled by the decisions of this court that in all cases wherein a testator makes no provision in his will for his widow, no renunciation by her is necessary as a condition precedent for her to sustain her claim for common law or statutory rights. *Pacholder v. Rosenheim,* 129 Md. 455, 99 A. 672; *Barroll v. Brice,* 115 Md. 498, 80 A. 1035; *Harris v. Harris,* 139 Md. 187, 114 A. 909; *Kuykendall v. Devecmon,* 78 Md. 537, 542, 28 A. 412.

The question which now arises, and which, we may add, is one of first impression in this court, is whether

the widow, under all the facts in the instant case, takes under the statute of distribution in intestacy, which, as amended by the Act of 1933, ch. 386 (article 93, section 127), provides for the payment to the widow of the sum of $2,000 in addition to the one-half of the surplus estate; or whether section 311 of article 93, relating to the rights of a widow who renounces the provisions of a will, is controlling; and finally, since it was not incumbent upon her to file a renunciation at all, does she take under the common law.

In the case of *Harris v. Harris, supra*, it was definitely decided that the statute of distribution in intestacy had no application where a decedent left a will. And whether the widow's rights are derived from the common law, or from the statute providing for her share of the estate upon her renunciation, it is unnecessary for us to decide, as in either event she takes only half of the personalty as well as the realty of her husband. Article 46, section 3. It is clear that chapter 386 of the Acts of 1933 affected estates of intestates only; and upon the authority of the cases hereinbefore cited, and in the face of the express language of the Act, it cannot be held to relate to cases in which the decedent has executed a will.

This observation would seem logical when applied as between the estates of intestates and those disposed of by will. In the former case the decedent has indicated no discrimination against his wife; and the Legislature, by the Act of 1933, has directed that she be more liberally dealt with than has been the law in this state over a long period of years. If it had intended to apply the same liberality to the estates of testates in those cases where the widow was ignored, it could, and doubtless would, have said so. This it did not do, however; and the reasonable inference is that, the testator having himself ignored the widow, the Legislature would not have been justified, under the circumstances, in the passage of an act that would have dealt more liberally with her in the disposition of the estate of the deceased husband.

We are therefore in accord with that part of the order

of the Orphans' Court disallowing the $2,000 claim in Appeal No. 1, as above designated for the purposes of this opinion.

. Turning now to the questions raised by Appeals 2 and 3, as above indicated, it is apparent that there is considerable conflict in the authorities, as to the right of specific or pecuniary devisees or legatees to exoneration at the expense of the general estate. It is urged on the one hand, that the testator must have meant that the persons to whom he made specific or pecuniary gifts should receive those gifts unimpaired, and that the general and residuary legatees should take only in the event of there being property available for the purpose. On the other hand, it is submitted that the testator must be regarded as having made such specific or pecuniary gifts subject to the possibility of his widow's asserting her legal rights in derogation thereof.

In consequence of this conflict, it is held in some jurisdictions that the residuary estate must bear the whole loss of devised property occasioned by the widow's election to take against the will, and cannot share with specific or pecuniary legacies if there remains enough to pay the latter, unless it is plainly shown by the will that the residuary legatee is a preferred object of the testator's estate. *Shannon v. Eno,* 120 Conn. 77, 179 A. 479; *Pace v. Pace,* 271 Ill. 114, 110 N. E. 878. In the latter case it is said: "Where legacies or devises are abated on account of a superior claim of the widow in consequence of her election the court will reduce legacies and devises of the same class proportionately, but specific legacies and devises are not in the same class as those which are residuary. As a general rule, residuary legatees and devisees take what is left, and their legacies and devises abate before specific devises."

The rule in Pennsylvania is to the effect that residuary legatees can take nothing until all legal claims paramount to the will, including the claim of a renouncing widow under the intestate laws, and the general and specific legacies, have been discharged; and that if both specific

and residuary legatees and devisees suffer because of the widow's election against the will, the former must be made whole before the latter receive anything. *Gallagher's Estate,* 76 Pa. 296; *Lonergan's Estate,* 303 Pa. 142, 154 A. 387.

In this state the question seems settled along the trend of the latter view, although at first blush it would appear difficult to reconcile the cases of *Devecmon v. Kuykendall,* 89 Md. 25, 42 A. 963, and *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 166 A. 599.

In the former case the testator devised and bequeathed to a nephew a pecuniary legacy of $500 and his law office and the ground upon which it was located, including all law books contained in said office. To his wife and daughter he devised certain other real estate, and bequeathed certain personal property, declaring that the provision made for his wife was to be in full of her interest in his estate, real and personal. He then directed his executor to dispose of all his real and personal property, not otherwise disposed of, and to divide the proceeds between the wife and daughter upon the basis of one-third and two-thirds, respectively. The widow renounced and elected to take her dower in the real and her legal share of the personal estate of her late husband; and accordingly the daughter took under her father's will all of the estate, except the devise and legacy to the nephew and such part of the estate as was received in kind by reason of the renunciation of the widow.

The widow thereafter brought suit for her share of the rent of the office property devised the nephew, and recovered a judgment against the nephew; whereupon, a bill in equity was filed by the nephew against the daughter for the purpose of compelling the latter to reimburse the complainant for the loss he sustained by reason of the renunciation of the widow, and her consequent right of dower in the real property devised the nephew.

Upon appeal from the action of the lower court in dismissing the bill, this court, in affirming the decree and adopting the opinion of the lower court, said: "When

Mr. Combs made his will, he no doubt assumed that his wife would accept, in lieu of her dower and all claim on his estate, what he left to her, but he also knew, or is presumed in law to have known, that she had her election either to take under the will, or renounce it, and take what the law of the state gave a widow. If, therefore, he intended to indemnify the plaintiff against any loss that he might sustain by such renunciation, he should have done so in his will. The opinion of the Court of Appeals in the case of *Darrington v. Rogers*, 1 Gill 403, announces the law, as applicable in that case, in terms that so accord with my views as to what the law must be that I quote at length from it. * * * 'It is true that the testator had made bequests to his wife out of one of those moieties which he thought would have been sufficient temptation to have prevented her from asserting her legal rights to his estate. But, for the event of her doing so, he has provided no change or substitution in the testamentary disposition of his property; and he having failed to do it, we cannot do it for him, the more especially as it would, *pro tanto*, work a disinheritance of his children and heirs at law. The election of the widow to stand upon her legal rights does, it is true, occasion loss to the appellants; but it is a loss resulting by operation of law, against which the testator, only, could have provided an indemnity. The condition of the children, too, was changed by the election of their mother. They might also have sustained loss by receiving less than their father had given, and by his will designed to have given them.' * * * In this case, it is fair to assume that Mrs. Combs received more under the law than she would have done under the will, as otherwise it is not likely she would have renounced. By renouncing, she was not only entitled to dower in the real estate left to the plaintiff, but in that left to Mrs. Kuykendall (the daughter), and to a third of the personalty. The loss is sustained by the plaintiff by reason of the act of Mrs. Combs—not Mrs. Kuykendall —and upon what principle can the latter be made to compensate the plaintiff for a loss occurring through the act

of the former?  The interest in the property left to the plaintiff thus acquired by Mrs. Combs, was not added to, nor did it in any manner increase, the residue left to Mrs. Kuykendall."

Among many other decisions of this court involving the effect of the renunciation of a widow, which is analogous to the election of the widow in the instant case, upon the remaining estate, will be found those of *Cockey v. Cockey,* 141 Md. 373, 374, 118 A. 850; *Safe Deposit & Trust Co. v. Gunther,* 142 Md. 644, 121 A. 479; and *Johnson v. Stringer,* 158 Md. 315, 148 A. 447.  In the last cited case, in speaking of the effect of renunciation by the widow, the court said:  "It is undoubtedly true that after her renunciation the full intent of the testator as expressed in his will could not be carried out, because the amount which each one of the beneficiaries was to receive under the terms of the will was altered by the renunciation of the widow.  What the law gave her after the renunciation was an increase over and above what the testator indicated was his intention, and resulted in a corresponding decrease to the remaining beneficiaries. * * * The renunciation of the widow was something that the testator could not prevent; but he is presumed to have known that she could renounce, and charged with knowledge of the legal effect of such renunciation.  Every husband, therefore, when he makes a will, does so charged with the knowledge that its provisions may be affected by the renunciation of his widow.  But a renunciation by the widow makes only such changes in the will and in the intention of the testator as the law compels.  In *Disston's Estate,* 257 Pa. 537, 101 A. 804, 806, a somewhat similar case, quoted with approval in *Safe Dep. & Trust Co. v. Gunther, supra,* that court * * * said:  'In a case like the one before us the effort must be to find and carry out the testator's chief intent with a minimum disturbance of the general plan of the will. * * * But, as said by Mr. Justice Mitchell, in *Vance's Estate,* 141 Pa. 209, 21 A. 643, a testator is presumed to know that a widow's

statutory rights are paramount, and that she may take against his will.' "

In the more recent case of *Mercantile Trust Co. v. Schloss, supra,* the testator, in disposing of a large estate, after directing that his debts and funeral expenses and all taxes be paid, bequeathed certain household furniture and other chattels to his widow absolutely, and directed that, pending the administration of his estate, she be paid the sum of $200 per month. He then devised and bequeathed to Mary Jane White leasehold property on Saratoga Street in Baltimore City, including all fixtures and furniture thereon, of the appraised value of $7,000, and, in addition thereto, the sum of $6,000 absolutely; and, after the aforegoing provisions of the will, directed that all the residuum of his estate, real and personal, be held by a trustee, with power to collect all income accruing therefrom, and to pay the net income to his widow so long as she should live. Upon the death of the widow, by the terms of the will, the trust terminated, and after the conversion of all property into cash, the trustee was to divide and distribute the corpus of the trust estate to specified persons, corporations or institutions in certain designated amounts. The will further directed that the provisions therein for the widow were intended to be in lieu of her dower and all interest, of every kind and description, in both the real and personal estate.

Within the time prescribed by law, after the probate of the testamentary paper, the widow renounced and elected to take her statutory rights in the estate.

In this situation the trustee named in the will filed its bill of complaint, wherein all the parties entitled under any of the provisions of the will were made defendants, and wherein it prayed, among other things, that the court instruct the trustee as to the effect, if any, of the renunciation of the testator's widow upon the bequest to Mary Jane White of the leasehold property and the pecuniary bequest; and secondly, to what extent, if any, the benefit intended for the widow should be sequestered to compensate Mary Jane White for the loss of an undivided

one-half interest in the leasehold property above mentioned, the testator having left no children surviving him.

After applying the rule, as stated by the authorities which we have already quoted in the instant case, namely, that the renunciation of the widow should do no greater violence to the intention of the testator than is compelled by law, the court said: "There can be no dispute as to the intention of the testator being that, after his debts and costs of administration were paid out of the estate, Mrs. Mary Jane White should receive the property 402 W. Saratoga Street, together with the household furniture and fixtures, and also the sum of $6,000 in money, all to be paid to her before the ascertainment of the amount of the trust fund. The Saratoga Street property was leasehold property subject to an annual ground rent of $50, and was appraised, as shown by the inventory, at $7,000. It is clear that under the will she would have been entitled to the Saratoga Street property as a whole, together with the $6,000 pecuniary legacy, subject only to the testator's debts and costs of administration, and before any of the beneficiaries of the trust fund received any part thereof; that is to say, the ascertainment of the trust fund was to be made by deducting the Saratoga Street property and the legacy of $6,000 from the testator's net estate. * * * There being no children of the testator, the statute (Code Pub. Gen. Laws 1924, art. 93, sec. 311), upon the widow's renouncing and electing to take her legal share, entitled her to one-half of the testator's net estate, which included the Saratoga Street property. By the decree, she or her assignees were given an undivided one-half interest in the Saratoga Street property, and one-half of the remaining net estate of the testator. This resulted in a loss to Mrs. Mary Jane White of one-half of the value of the Saratoga Street property, which one-half, according to the appraisement, would amount to $3,500. The question, therefore, is: Should Mrs. White be compensated for such loss out of the corpus of the trust estate after Mrs. Schloss, the widow, had received her one-half share thereof?"

After noting the fact that it was urged that the cases of *Devecmon v. Kuykendall, Cockey v. Cockey, Safe Dep. & Trust Co. v. Gunther, and Darrington v. Rogers, supra,* were applicable to the case then under consideration, it was further stated by this court that: "The same rule is stated in varying language and applied in others of the above-cited cases, and now appears to be firmly settled. In all of those cases there was nothing left in the estate which had been devised or bequeathed to the widow, after her renunciation and the receipt of her legal share, which could be sequestered for the purpose of reimbursing or making whole specific legacies or devises which had been impaired by the renunciation of the widow; and consequently it was held that such loss was occasioned by operation of law, and must be borne without remedy, where the testator himself had made no provision for such contingency. We do not think the facts of the present case bring it within the application of the rule announced in those decisions. It is apparent that, after the debts and costs of administration were paid, the first object of the testator's bounty was Mrs. White, even to the exclusion of his widow, because the will provided that she should receive her bequest in diminution of the amount of the trust fund to the income of which the widow would have been entitled for life, and the corpus divided at her death among those named. The renunciation of the widow does not change the intent as expressed in the will, and should not be allowed to defeat such declared intention, unless it be impossible to give it fulfillment. It was the declared intent of the testator that Mrs. White should receive her legacy before those entitled to the remainder of the trust fund; and while the renunciation of the widow takes from her one-half of the Saratoga Street property, she should be reimbursed from the remaining corpus of the trust before the remaindermen entitled to that corpus receive any part thereof."

It will be noted that all of the above cited cases arose under situations in which the effect of a widow's renunciation was involved; and as, under the law of this state,

upon such renunciation the widow is entitled to one-half of the personalty, in event of there being no children of the testator, and one-third thereof in event of there being children; and further, as to realty, she is entitled to a dower interest therein if she so elects, or, in the absence of such election, to the same interest, as the case may be, to which she is entitled in the personalty, and in the selection of her portion of the estate she is entitled to receive the same in kind, we are of the opinion that the apparent conflict between the cases of *Devecmon v. Kuykendall* and *Mercantile Trust Co. v. Schloss, supra,* is based upon the theory that in the former case the testator was charged with knowledge that the widow could renounce the will and thereby become entitled, under the law existing at that time, to a dower in the realty which was the subject matter of that suit, and which could not be restored to the devisee by resort to the residuary estate, but to the contrary, could only be annulled by the death of the widow; whereas in the latter case the leasehold property, being in its nature personalty, was not subject to any encumbrance which the residuary estate could not remove by recoupment.

As we have seen, the election of the widow in the instant case to take her legal share of Mr. Marriott's estate was equivalent, in so far as her ultimate interest in the estate is concerned, to the same thing as though he had devised and bequeathed her a part of his estate by his will and she had renounced the same. The only distinction we can observe between a case in which a testator leaves a part of his estate to his widow and she renounces, and a situation where he leaves her nothing, as in the instant case, and she simply claims her legal share of the estate, is that in the latter case it is obvious that the husband desires that the widow have no part of his estate. This inference is apparent in the case before us, because the testator has stated his reason and expressed the hope that the widow will not assert her rights. We can see no difference, with respect to cases wherein the rights between specific or pecuniary legatees and general or

residuary legatees are involved, under a renunciation or under an election. In either case, as between the above classes of legatees, the testator has expressed first a desire to give to the special or pecuniary legatees certain definite property or sums, and then to give whatever may remain of his bounty to those of the general or residuary type. Applying these principles to the case now before us, under the ruling in the *Schloss* case, we must hold that the pecuniary legatees of Mr. Marriott are entitled to be first paid out of the net estate, after the widow's rights have been ascertained and satisfied.

In conclusion, it may be noted that in the instant case it is practicable to restore to the pecuniary legatees the loss occurring by reason of the election of the widow to take her legal share of the estate, from the funds left in the residuary estate; whereas in the *Devecmon* case the right of dower attached to the property devised, by reason of the renunciation of the widow, which encumbrance upon the title devised could not be eliminated by resort to any residuary funds in the estate. In other words, the real property devised in the latter case, after the widow's renunciation, was encumbered by a right vested in her by operation of law, which could not have been eliminated except by grant from the widow or upon her death; and the devisee in that case was in the same status as if the property had been devised to him subject to an existing lien.

It therefore follows, from what has been said, that the order in No. 53 will be affirmed, and the orders in Nos. 54 and 55 will be reversed.

*Order in No. 53 affirmed; order in No. 54 reversed; order in No. 55 reversed; costs to be paid out of the estate.*