LEFTERIS, Executor *v.* POOLE

[No. 202, September Term, 1963.]

*Decided March 5, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

*Stanford Hoff*, with whom were *Sponseller & Hoff* on the brief, for the appellant.

*C. Rogers Hall, Jr.*, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The Orphans' Court for Carroll County denied an executor's petition, praying that he be authorized to execute and deliver a deed for a small parcel of real estate to the alleged wife of the deceased, and he has appealed.

The only question involved is whether a widow, who is ignored in her husband's will, is entitled to "four thousand dollars or its equivalent in property, or any interest therein at its appraised value," under the provisions of Code (1963 Cum.

Supp.), Article 93, Section 333, before a judgment creditor of the husband's estate is paid.

Harrison E. Fox died, testate, on February 11, 1961, leaving no descendants, parents, brothers, or sisters. He devised and bequeathed his entire estate to his friend Arthur Lefteris, the appellant, individually. The appellant alleges that Fox was survived by a widow, Cynda F. Fox, from whom he had been separated for many years. The appellee contends the record is devoid of any proof that she is the widow of the decedent, but, for the purposes of this appeal, we shall assume, without deciding, that she is.

The widow was not mentioned in Fox's will. His estate consisted of cash and personal property of the value of some $4,020 and a parcel of real estate appraised at $2,000, from which rental income was added to the estate. Subsequent to Fox's decease, appellee obtained a judgment against his estate for $5,540. This judgment seems to be the only "claim" against the estate, and the above mentioned parcel of land is the only real property left by the decedent, but the record extract fails to disclose the precise status of the personal property after the payment of taxes (if any), and costs of administration. However, we may safely assume, and we do assume, that the personal estate is insufficient to pay said taxes, costs and appellee's judgment. The widow made no election to take dower under Article 46, Section 4, nor did she renounce under Section 329 of Article 93, *infra*.

From the above, it may be seen that several statutory provisions may possibly be involved: Code (1957), Article 45, Section 6 (dower rights of widow) ; Article 46, Sections 3 and 4 (rights of surviving spouse where decedent died testate—dower not abolished—election to take dower and renunciation of other rights in real estate) ; Code (1963 Cum. Supp.), Article 93, Sections 329 and 333 (renunciation of will by widow—not required if nothing passes to surviving spouse by devise).

The appellant singles out Section 333,[1] *supra,* and traces it

---

1. Section 333, in pertinent part, reads:
   "But if in effect nothing shall pass by such devise [every devise of land or bequest of personal estate to the spouse of a testator], the surviving spouse shall not be thereby barred

back to its origin in Chapter 101 of the Acts of the General Assembly of 1798. He points out that the section originally stated that "it being the intent of this act and consonant to justice, that a widow accepting, or abiding by a devise, in lieu of her legal right, shall be considered as a purchaser with a fair consideration," and it remained unchanged until 1939, when it was repealed and re-enacted in substantially the same form as it is today. (An amendment in 1959 substituted "four thousand dollars" for "two thousand dollars," and one in 1963 made the section also applicable to surviving husbands.) He then argues that the plain terms of the statute provide that the widow shall have "four thousand dollars or its equivalent in property," and these provisions should be treated the same as a widow's right of dower [2] in that the widow's rights derived therefrom should have preference over the husband's creditors. He cites several early Maryland cases which hold that a widow is "preferred to creditors to the value of her dower." We will point out later that we have no quarrel with the language just quoted.

We fear, however, that it would be an oversimplification of the case to confine our consideration thereof to Section 333 alone, as the appellant has. In order to arrive at the true meaning of the section, it is necessary to examine several other statutory provisions, which are closely related to it, and some of the decisions of this Court construing them. For present purposes, it will be unnecessary to trace the laws here involved further back than 1898.[3]

---

whether he or she shall or shall not renounce as aforesaid. In such case the widow * * * shall take * * * four thousand dollars or its equivalent in property, or any interest therein at its appraised value, and one half of the residue of the lands as an heir and one half of the surplus personal estate remaining (if the deceased husband * * * shall not be survived by descendants or a father or a mother, but shall be survived by a brother or sister or a child or descendent of a brother or sister) and no more."

2. Wherever used in this opinion, the word "dower" will refer to common-law dower and not to "legal shares" in personalty or realty, or to statutory dower.

3. Anyone desiring to examine the earlier laws will find an interesting and thorough historical outline in Chief Judge Brune's

By Chapter 457 of the Acts of that year, the Legislature repealed all of Article 45 of the Code of Public General Laws (title "Husband and wife") and re-enacted the same with amendments. This enactment is generally referred to as the "Married Women's Property Act," and Article 45 of the present Code is still titled, "Husband and Wife." By Section 1 (6) of the Act (now Code [1957], Article 45, Section 6), it was, and is, provided that "a widow shall be entitled to dower in lands held by equitable as well as legal title in the husband at any time during the coverture." It will be noted that the statute does not define "dower in lands." Dower is a common-law right of a surviving widow to a life estate in one-third of the inheritable real estate owned by the husband during the coverture, which right, prior to the husband's decease, is said to be inchoate, and after his death it becomes consummate. *Chew v. Chew,* 1 Md. 163, 172; Venable, *The Law of Real Property, Leasehold Estates in Maryland,* pp. 21, 22; 4 *Kent Com.* 35-72; *United States v. Certain Parcels of Land, Etc.,* 46 F. Supp. 441 (D.C., D. Md.).

Prior to 1916, the mode in which real estate of a deceased person descended varied materially from the manner in which his or her personal property was distributed. By Chapter 325 of the Acts of that year, the Legislature amended Article 46 of the Code relating to the descent of real property for the purpose of "thereby [according to the Act's title] assimilating the law relating to the real property of decedents more nearly to the law relating to personal property." Section 4 of said Article provides that the estate known as dower is not abolished, but any party entitled to dower shall be presumed to have surrendered the same and accepted the provisions of said Chapter 325, unless said party shall sign, within a certain period of time, an election to take dower. Section 3 provides that a widow (whose husband dies testate and there is no election to take dower) shall take, as an heir, the same share in the husband's estate, as she would take in the personal estate of a resident spouse so dying testate.

---

opinion in Kreamer v. Hitchcock, 207 Md. 454, 115 A. 2d 255. See also 1 Alexander's British Statutes, 306 et seq., and Venable, Law of Real Property and Leasehold Estates, p. 21, et seq.

Section 329 of Article 93 (amended among other occasions in 1939, and last in 1959) provides, *inter alia,* that a devise or bequest to a surviving widow in her husband's will will bar her right to dower or share in his land, unless, within a specified time, such devise or bequest be renounced. And if she does renounce, she may still have her dower in her husband's land and her "legal share of the personal estate," or she may take her "legal share of both the real and personal estate." If she elects to take her "legal" shares, they are the same, under the circumstances here involved, as those set forth in Section 333 in footnote 1.

In 1939, the Legislature also amended Section 333 (as pointed out above) so that, if nothing, in effect, passes under a husband's will to the widow, she takes certain portions of his realty and personalty even though she fails to renounce.

The time for election of dower either under Section 4 of Article 46, or under Section 329 of Article 93 has long since passed. Hence, it is seen that the widow in the case at bar has surrendered her common-law right of dower (which would not have authorized the order sought herein even if she had elected to take it), and now can have no greater interest in her husband's estate than that provided for her by either Section 3 of Article 46 or 333 of Article 93. *Kreamer v. Hitchcock,* 207 Md. 469, 115 A. 2d 928.

We proceed to consider whether either of said sections authorized or required the passage of the order requested. This Court held in *Kreamer, supra,* that said Sections 4 and 329 are complementary rather than conflicting and that Section 4 applies in cases of testacy as well as intestacy. And further that "Section 3 [of Article 46] adopts as its measure of the share of the real and personal property of a decedent spouse dying testate to which the surviving spouse may be entitled, the share of the personal property of such a decedent spouse to which the surviving spouse would be entitled." This Court also held in *Marriott v. Marriott,* 175 Md. 567, 3 A. 2d 493, that the statutes providing for the distribution of personal property upon intestacy had no application where there was a will; and in *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329, that if a widow elects not to take dower, she has only a distributive share in

the property owned by her husband at the time of his death. This means, of course, that the widow here, since the testator left no descendants, takes, if limited to the portion of her spouse's estate derived under Section 3 of Article 46, one-half of the real property *as an heir*, and one-half of the net personal estate. *Kreamer v. Hitchcock, supra.* Compare *Coomes v. Clements*, 4 H. & J. 480; *Hokamp v. Hagaman*, 36 Md. 511. It is obvious, therefore, that under the facts as we related them above, no property rights accrued to the widow as a result of Section 3 which would call for the passage of the order requested.

We now consider whether the widow derived any rights under the provisions of Section 333 which entitled her to demand the passage of the order requested. Since she received nothing under the will, she is not barred from sharing in her husband's estate by reason of her failure to renounce, *Kreamer v. Hitchcock, supra,* but she is only entitled, as pointed out above, to her "distributive share" therein.

She contends that this distributive share entitled her to "four thousand dollars or its equivalent in property, or any interest therein at its appraised value" before creditors of her husband's estate are satisfied, by reason of the express terms of Section 333. We are unable to agree. The above quoted language first came into our law by Chapter 386 of the Acts of 1933, now Article 93, Section 137 (providing at that time "two thousand dollars" etc.). It related, at that time, only to the distribution of intestate estates, and such an allowance took place only after "all debts of an intestate * * * shall have been discharged or settled." Article 93, Section 134 (then Section 124). It was not until after this Court's decision in *Marriott v. Marriott*, 175 Md. 567, 3 A. 2d 493, holding said Chapter 386 of the Acts of 1933 inapplicable in cases of testacy, that Chapter 498 of the Acts of 1939 amended what is now Section 333, providing for an additional widow's share in cases of testacy, and, generally, conforming it with Sections 136 and 137 of Article 93. There is not a word in the statute, nor in its title, we think, that would suggest the Legislature intended to give a widow four thousand dollars or its equivalent in property from her husband's estate, before the payment of the husband's debts

and the costs of administration. If this were the Legislature's intention, it would be the first time in the history of the State that such a large allowance against the interest of creditors had been made to a widow, and it seems clear that if such a drastic innovation in the testamentary law were contemplated, the Legislature would have spelt the same out in definite and precise terms. In addition, if the above were the legislative intention, it seems only logical that the Legislature would have correlated Section 333 with Sections 336 and 337, wherein specific monetary allowances are made to widows after the payment of funeral expenses. We hold, therefore, that the provisions of Section 333 did not entitle the widow to four thousand dollars or its equivalent in property before creditors of her husband's estate were satisfied; hence the refusal of the Orphans' Court to pass the order was correct.

In rendering this decision, we have not overlooked the fact that Section 333 provides that the widow shall take four thousand dollars, etc., if the deceased husband shall not be survived by descendants or a mother or father "but shall be survived by a brother or sister or a child of a brother or sister," and there is no showing in the case at bar that the testator was survived by a brother, sister or a child of a brother or sister. However, we think this provision is immaterial under the facts of this case. Here we have a will, which clearly shows that the testator did not desire his widow to have his estate. She was therefore required to take the portion thereof that the law allows her. Cf. *Hokamp v. Hagaman,* 36 Md. 511; Harland, *Domestic Relations,* p. 52.

*Order affirmed, with costs.*